HENRY VOSE *vs.* THE EAGLE LIFE AND HEALTH INSURANCE
COMPANY.

If the application for life insurance forms a part of the policy, the representations contained in it constitute a warranty, which must be strictly true, and any misstatement in which, whether intentional or not, will avoid the policy.

If, in the representation, on which a life insurance is effected, a material fact is untruly stated or concealed, the policy will be void, though no specific questions are asked respecting such fact, and though such statement or concealment is the result of accident or negligence and not of design ; provided a general question is put, which would elicit that fact.

Where an applicant for life insurance answered an interrogatory, whether he had ever been afflicted with pulmonary disease, in the negative ; and in answer to an interrogatory, whether he was then afflicted with any disease or disorder and what, stated, that he could not say that he was afflicted with any disease or disorder, but that he was troubled with a general debility of the system ; and the applicant was then in a consumption, the symptoms of which had begun to develop themselves five months before, and were known to him ; but were not disclosed to the insurers, although sufficient to induce a reasonable belief on the part of the applicant, that he had such disease ; it was held, that whether these statements amounted to a warranty or not, they were so materially untrue as to avoid the policy, although the insured, at the time of his application, did not believe that he had any pulmonary disease, and the statement made by him was not intentionally false, but according to his belief, true.

The knowledge of the condition of the insured, on the part of the agent of the insurers, in a life insurance, is immaterial as to the question of misrepresentation or concealment.

THIS was an action by the plaintiff, as the administrator of George F. Pease, on a policy of insurance signed by the defendants, a company incorporated by the laws of New Jersey, for $3000 on the life of the intestate during the continuance of the policy, in consideration of the annual payment of a premium of $55.50.   The action having been referred, the arbitrators, at the request of the parties, reported a statement of the facts appearing before them at the hearing, and referred the questions of law arising thereon to the court.   The report of the arbitrators was, in substance, as follows : —

The plaintiff's intestate, on the 1st of December, 1848, applied to the defendants' agent at Springfield to obtain insurance on his life for $3000, and signed an application for that purpose in the form prescribed by the company.   The application contained various interrogatories relating to the circumstances, condition, and state of health of the applicant, to be answered

by him ; and the answers to which constituted the representation upon which the insurance was to be effected.   One of these questions, the 9th, was : " Have the party's parents, brothers, or sisters, been afflicted with pulmonary complaints or consumption ? " to which the applicant answered, that his mother and sister died of consumption.   The 10th was : " Has the party or any of his family been afflicted with pulmonary complaints, consumption, or spitting of blood ? " to which the intestate answered in the negative.   Another, the 17th, was as follows : " Is the party now afflicted with any disease or disorder, and what ? "   To this the intestate answered : " He cannot say, that he is afflicted with disease or disorder, but at the present time is troubled with a general debility of the system."   The last interrogatory, the 25th, which the applicant answered in the affirmative, was expressed in these terms : " Is the party aware, that any untrue or fraudulent allegation, or if there shall be any misrepresentation or concealment made in effecting the proposed assurance, it will render the policy void, and that all payments of premium made thereon will be forfeited ? "   In answer to the interrogatory inquiring " the name and residence of the applicant's usual medical attendant," or (if he had none) " of some other medical person to be referred to for information as to his health," the intestate gave the name of Alfred Lambert, Springfield ; and the name of R. E. Ladd, of Springfield, as " an intimate friend to be referred to for similar information."

On receiving the application, the agent called on R. E. Ladd, to whom the applicant had referred, and on Dr. Lambert, his medical attendant.   The latter not being at home, the agent, at the suggestion of Pease, called on another physician, Dr. Wood, who had sometimes been employed by the agent to make medical examinations for the defendants.   Dr. Wood examined Pease the same day, in the agent's presence, and wrote and subscribed a certificate, which he delivered to the agent, as follows : " I hereby certify that I have examined George F. Pease.   The organs of his chest give no indication of organic disease, the air passes through every part of his lungs freely.   His physical appearance is good, and has no

appearance of chronic predisposition.    I consider him a good subject for insurance."

The application and certificate were forwarded immediately to the directors of the defendants, and thereupon a policy was executed, dated on the same day with the application, and sent to the agent, who subsequently delivered it to the intestate, and received the premium for the first year.

The policy contained a clause, declaring it to be made upon this express condition, " that said application forms a part and parcel of this policy, and if it shall be found, that the said application is in any respect untrue, or that there is any misrepresentation or concealment in the said application, then this policy shall be void and of no effect, and all the premiums paid thereon shall be forfeited to the said company."

The arbitrators reported, that the plaintiff's intestate, at the time of making his application, was laboring under a tubercular consumption, the incipient symptoms of which had begun to develop themselves as early as the July previous, and that he died of the same disease in February, 1849 ; that he knew of symptoms in respect to himself, which ordinarily indicate the incipient stages and subsequent progress of such disease, at the time of and previous to making his application, but that he did not disclose the existence of these symptoms to the defendants' agent ; that when he made the application, the intestate did not believe he had such complaint, though he had reasonable cause to do so ; and that the statement made by him was not intentionally false, but, according to his belief at the time, was true.

The arbitrators also reported, that so many of the symptoms of the intestate's disease were known to the defendants' agent, before the policy was made and delivered, as to indicate to a man of ordinary intelligence, that he was laboring under disease of a pulmonary character; and that the agent had reasonable cause to believe, that the intestate was laboring under disease of that character.

The arbitrators reported farther, that, so far as the intestate's application contained statements inconsistent with the fact, that, at the time of the application and the issuing of the

policy, he was laboring under a pulmonary disease, which was incurable, and what is known as consumption, such statements were not true; and that if the court should be of opinion, that the policy and application amounted to a warranty, on the part of the intestate, that he was not then, and for some months previous had not been, laboring under the disease of consumption or pulmonary complaint, the arbitrators awarded and determined that the plaintiff had not sustained his action; but if the court should be of opinion, that the representations contained in the application, together with the policy, did not constitute a warranty, and should also be of opinion, that, upon the facts above stated, the defendants were liable, the arbitrators awarded and determined in favor of the plaintiff, for the amount due on the policy.

*H. Vose*, for himself.

1. The rule of construction, in deciding the question of warranty, is more liberal and less technical in life insurance than in marine insurance. *Jolly* v. *Baltimore Equitable Society*, 1 Har. & G. 295; *Farmers Ins. & Loan Co.* v. *Snyder*, 16 Wend. 481.

2. What statements in the policy, or forming a part of it, constitute a warranty, depends on the intention and understanding of the parties, as manifested in the whole contract and the attending circumstances. *Houghton* v. *Manufacturers Mut. Fire Ins. Co.*, 8 Met. 114; Chit. Con. 69. The 10th answer is to be construed together with the other answers, and particularly with the 17th. *Hesse* v. *Stevenson*, 3 B. & P. 565; *Nind* v. *Marshall*, 1 Brod. & B. 319; *Kane* v. *Hood*, 13 Pick. 281; *Sweet* v. *Brown*, 12 Met. 175.

3. The 17th answer cannot in any sense be construed as a warranty. 1 Phil. Ins. 347–410; *Catlin* v. *Springfield Fire Ins. Co.*, 1 Sumn. 434.

4. There was no concealment by the insured of any material fact, which the insurers did not know, or have the means of knowing; and no other concealment would vitiate the policy. 1 Phil. Ins. 241–253; *Green* v. *Merchants Ins. Co.*, 10 Pick. 402; Steph. N. P. 2145–2147; *Carter* v. *Boehm*, 3 Bur. 1905.

5. The defendants are chargeable with the knowledge of

any facts acquired by their agent in the legitimate discharge of, and relating to, their business.  Story, Ag. § 140 ; *McEwen* v. *Montgomery County Mutual Ins. Co.*, 5 Hill, 101.

*W. Rutherfurd*, of New Jersey, and *H. Morris*, for the defendants.

1. The application is expressly referred to in the policy and made a part of it ; they are therefore to be construed together ; and, so construed, they are a warranty that the facts, stated in the answers to the interrogatories in the application, are true.  *Routledge* v. *Burrell*, 1 H. Bl. 254 ; *Worsley* v. *Wood*, 6 T. R. 710 ; *Duncan* v. *Sun Fire Ins. Co.*, 6 Wend. 488 ; *Snyder* v. *Farmers Ins. & Loan Co.*, 13 Wend. 92 ; *Roberts* v. *Chenango County Mutual Ins. Co.*, 3 Hill, 501 ; *Burritt* v. *Saratoga County Mutual Fire Ins. Co.*, 5 Hill, 188 ; *Jennings* v. *Chenango County Mutual Ins. Co.*, 2 Denio, 75 ; *Murdock* v. *Chenango County Mutual Ins. Co.*, 2 Comst. 210 ; *Davis* v. *Rainsford*, 17 Mass. 207 ; *Blaney* v. *Rice*, 20 Pick. 62 ; *Megown* v. *Lapham*, 21 Pick. 135 ; *Bryant* v. *Ocean Ins. Co.*, 22 Pick. 200, 204 ; *Houghton* v. *Manufacturers' Mutual Fire Ins. Co.*, 8 Met. 114, 120 ; *Clark* v. *Manufacturers' Ins. Co.*, 8 How. 235.

2. The parties by their own express agreement have made the policy and application a warranty of the truth of the answers.  *Lothian* v. *Henderson*, 3 B. & P. 499 ; *Snyder* v. *Farmers Ins. & Loan Co.*, 13 Wend. 92 ; *Jennings* v. *Chenango County Mutual Ins. Co.*, 2 Denio, 75.

3. The answers contained in the application, regarded as mere representations, avoid the policy, concerning, as they do, material facts, and not being substantially true, nor made in good faith, both of which requisites must concur in order to support the policy.  *McDowall* v. *Fraser*, Doug. 260 ; *Lynch* v. *Dunsford*, 14 East, 494 ; *Vanderheuvel* v. *United Ins. Co.*, 2 Johns. Ca. 127 ; *Vanderheuvel* v. *Church*, 2 Johns. Ca. 173, n. ; *Stetson* v. *Massachusetts Mutual Fire Ins. Co.*, 4 Mass. 330, 337 ; *Hoyt* v. *Gilman*, 8 Mass. 336 ; *Curry* v. *Commonwealth Ins. Co.*, 10 Pick. 535 ; *Bryant* v. *Ocean Ins. Co.*, 22 Pick. 200 ; *Kohne* v. *N. H. Ins. Co.*, 1 Wash. C. C. 158 ; *Baxter* v. *N. E. Ins. Co.*, 3 Mason, 96 ; *Carpenter* v. *American Ins*

*Co.*, 1 Story, 57; *Columbian Ins. Co.* v. *Lawrence*, 2 Peters, 25.

4. The concealments and misrepresentations of the plaintiff are not excused by any knowledge of the facts on the part of the defendants.

5. Evidence that the defendants' agent knew, or had reasonable cause to believe, that the insured was laboring under a pulmonary disease, cannot be admitted to control or vary the written contract of the parties. *Higginson* v. *Dall*, 13 Mass. 96; *Wiggin* v. *Boardman*, 14 Mass. 12; *Parks* v. *General Interest Assurance Co.*, 5 Pick. 34; *Jennings* v. *Chenango County Mutual Ins. Co.*, 2 Denio, 75; *Atherton* v. *Brown*, 14 Mass. 152; *Weston* v. *Emes*, 1 Taunt. 115; *Flin* v. *Tobin*, 1 Mo. & Ma. 367; *Vandervoort* v. *Columbian Ins. Co.*, 2 Caines, 155; *Cheriot* v. *Barker*, 2 Johns. 346; *Loring* v. *Proctor*, 13 Shep. 18.

Fletcher, J. Insurance on life was formerly held to be unlawful, and was forbidden in some foreign countries by particular enactments, as being repugnant to good morals, and opening a door to abuses. But a very different view is taken of the subject at the present time. Life insurance has now become a very common and a very extensive business, and is regarded as highly beneficial to the community.

The usual mode of proceeding, to effect an insurance upon a life, is, for the party wishing to insure to procure at the office of the insurers a printed form of proposal, which is to be filled up by him. This form, in general, contains a large number of interrogatories, the answers to which are to be written upon the blanks left for the purpose. This was the course of proceeding in the present case, and several of the interrogatories and answers thereto are given in the statement. This proposal or declaration, when forming a part of the policy, has been held to amount to a condition or warranty, which must be strictly true or complied with, and upon the truth of which, whether a misstatement be intentional or not, the whole instrument depends. The party effecting an insurance cannot be too cautious, therefore, in ascertaining the real state of the facts alleged in his declaration.

In an early case, where the warranty was, that the person

whose life was to be insured was in good health, at the time of making the policy, it was held, that the warranty was to be construed in a liberal sense, as regarded the insured, and was not to be understood to import, that he was perfectly free from the seeds of disorder. Though the insured may, by accident, be afflicted with a particular infirmity, if his life is in fact a good one, and he is in a reasonably good state of health, so that his life may be insured on the common terms applicable to a person of his age and condition, the party insuring will have a right to recover. *Ross* v. *Bradshaw*, 1 W. Bl. 312; 2 Marsh. on Ins. 773.

The warranties in policies now issued by insurers are of a much more specific nature, than that contained in the above-mentioned case. In the present case, the warranties are of a very particular and specific character, namely, whether the insured had been afflicted with certain specified disorders, or was at the time afflicted with any disease or disorder. But where there is no warranty, an untrue allegation of a material fact, or, a concealment of a material fact, will avoid the policy, though such allegation or concealment be the result of accident or negligence and not of design.

It is the duty of the insured to disclose all material facts within his knowledge. Although specific questions applicable to all men are proposed by the insurers, yet there may be particular circumstances affecting the individual to be insured, which are not likely to be known to the insurers; and the concealment of a material fact, when a general question is put by the insurers, at the time of effecting the policy, which would elicit that fact, will vitiate the policy.

Applying these principles of law to the present case, and the conclusion is inevitable, that the plaintiff is not entitled to recover. Upon the facts in the case, it is not important whether the proposal or application is considered as a warranty or representation. As a warranty it was so manifestly untrue, and as a representation there was manifestly so material a misrepresentation, that in either view the policy is invalid.

The fact is established, that at the time of making the proposal and issuing the policy, the insured was rapidly declining

in a confirmed consumption, and had been so declining for five months previous, and continued to live but about two months after this time.   Yet, in answer to the tenth interrogatory the insured expressly denied, that he or any of his family had been afflicted with pulmonary complaints, consumption, or spitting of blood.   In answer to the seventeenth interrogatory, the insured said that he could not say that he was afflicted with any disease or disorder.

It is immaterial, that the insured did not suppose himself in a consumption ; the fact was so, and the statement·was manifestly contrary to the fact, which was a most material and conclusive fact.   The fact of the general debility of the system, stated by the insured, was not important in the manner in which it was stated; as it might arise from a variety of causes not materially affecting the risk, and would not, therefore, by any means, give the insurers the information wanted.

The insured was asked directly, whether he was at the time affected with any disease or disorder, and what ; to which he answered, that he could not say, that he was afflicted with any disease or disorder ; but he could have stated the symptoms of consumption, which he had, and which he knew he had, and which he had had for five months previous ; and which were certainly most material and important to be known by the insurers.   It is believed that omissions or concealments less important than this, and without any intentional fraud, have been held to avoid policies upon life.   But it is not necessary to make this any part of the ground of the decision in this case ; as the answer to the tenth interrogatory is so manifestly and most materially untrue, that whether regarded as a warranty or a representation it must avoid this policy.

The knowledge, which the award finds that the defendants' agent had in regard to the situation of the insured, cannot be material.   The agent did not and could not make the contract.   He received the application, and forwarded it to the directors of the company at their place of business, and the contract and policy were there made and signed by the offi-

cers of the company wholly upon the basis of the application, which is expressly declared, both in the application itself and in the policy, to form a part of the policy.   Both the application and policy are particularly explicit and strong in this respect.

It is farther set out and declared in the application signed by the insured, that if any fraudulent or untrue allegation, misrepresentation, or concealment is contained in the proposal, all moneys which had been or might be paid on account of such assurance shall be forfeited to the said company, and the policy shall be void.   The insured further declared in his proposal, that he was aware, that any untrue or fraudulent allegation, misrepresentation or concealment, made in effecting the proposed insurance, would render the policy void, and that all payments of premiums made thereon would be forfeited.   The instruments executed by the parties, in the present case, are certainly peculiarly strong and specific, binding the insured to the utmost care and caution in his statements and representations, and to the most careful and scrupulous disclosure of every thing material to the risk.

Upon the grounds stated, judgment on the award must be for the defendants.