18h 202
L-ed 352
31f 243 JAMES A. ABBOTT AND HANNAH K., HIS WIFE, DEMANDANTS AND PLAINTIFFS IN ERROR, v. THE ESSEX COMPANY, TENANTS.

The following clause in a will, namely: "I give to my two sons, viz: John and Jacob, all my lands, &c., live stock, &c., tools, &c., bonds, &c., to be equally divided between them, and the executor is ordered to pay debts out of that part of the estate. *Item.*—It is my will that if either of my said sons, John and Jacob, should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs," gave an estate in fee simple to John and Jacob; and the share of the one who first died without issue passed over to the other son by way of executory devise.

THIS case was brought up by writ of error from the circuit court of the United States for the district of Massachusetts.

The part of the will which gave rise to the question is stated in the opinion of the court.

It was admitted by the parties that said testator died in the year 1775; that his will was duly proved August 5, 1776; that his two sons, John Kittredge and Jacob Kittredge, survived him; that said John Kittredge died in the year 1826, never having been married; that said Jacob Kittredge died in the lifetime of his brother John, on July 15, 1807, leaving the following children, namely : John Kittredge, his oldest child, who died, without ever having had issue, on the 10th of January, 1823; Jacob Kittredge, his next oldest child, who died December 18, 1831, having had issue one child, who is the demandant, Hannah Kittredge Abbott; Thomas W. Kittredge, his next child, who is now alive; Hannah Kittredge, his next child, who died intestate on the 28th of October, 1815, never having had issue; George W. Kittredge, his next child, who died July 4, 1836, intestate, having had issue one child, Jacob Kittredge, who is now alive; and William H. Kittredge, his last child, who died intestate on the 1st of October, 1849, never having had issue. The marriage of the demandants was also admitted, and that the surviving son of Jacob Kittredge, the devisee named in said will, and also his surviving grandchild, had, before the commencement of the suit, released and conveyed to demandants all their interest and title in the demanded premises.

The demandants thereupon submitted, and requested the judge to instruct the jury, that, by the said will of John Kittredge, his two sons John and Jacob, therein named; took and became seised as to the real estate therein devised to them in equal moieties of an estate tail general, with cross remainder in fee-simple, it being material and necessary, to enable the demandants to maintain the issue on their part, to prove that estates tail as aforesaid were so devised by the said will. But the judge refused so to instruct the jury, but did instruct them that, under said will, the testator's said sons, John Kittredge and Jacob Kittredge, took and became seised of an estate in fee simple, and that the share of the one of the said sons who should first die without issue in the lifetime of the other of said sons, would in that event go over to said other son by way of executory devise.

A writ of error brought up this ruling for review.

The case was argued by *Mr. Abbott* and *Mr. Fessenden*, for the plaintiffs in error, and *Mr. Merwin* and *Mr. Loring*, for the defendants.

The points made by the counsel for the plaintiffs in error were the following, namely :—

The plaintiffs in error claim that the estate which the two sons, John and Jacob, took under this will were estates in fee tail general, with cross remainders in fee-simple.

### Rule of Interpretation.

The rule by which this court is to be governed, in the interpretation of this will, is the rule of law which has been established by the highest judicial tribunal of the State or district in which the land lies, or the suit originated. Hinde *v.* Vattier, 5 Pet. U. S. Rep. 397; Jackson *v.* Chew, 12 Wheat. 153; Bank of the United States *v.* Daniels, 12 Pet. 33; Webster *v.* Cooper, 14 How. 488.

### Propositions.

1. The testator, by the first clause in the will, gave to John and Jacob an estate for life only; and, although he directed the executor, John, to see that the debts and legacies were paid out of that part of the estate given to John and Jacob, this was a charge upon the estate or fund given to John and Jacob, and not upon the sole executor personally; and therefore the charge does not enlarge the estate for life to an estate in fee-simple. 2 Jarman on Wills, 126, and note; Denn *v.* Slater, 5 D. & E. 335; Doe *v.* Owens, 1 Barn. & Adolph. 318; Denn *v.* Mellor, 5 D. & E. 558; Clark *v.* Clark, 1 Crompt. & Mees. 39; Lithgow *v.* Kavanagh, 9 Mass. 161; Cook *v.* Holmes, 11 Mass. 528; Wait *v.* Belding, 24 Pick. 129; Parker *v.* Parker, 5 Met. 134; Gardner *v.* Gardner, 3 Mason, 209; Legh *v.* Warrington, 1 Br. Parl. C. 511; Williams *v.* Chitty, 3 Ves. jr. 552; Miles *v.* Leigh, 1 Atk. 573.

2. Having given each of his two sons an estate for life, the next item in the will (namely, the proviso "that if either of said sons, John or Jacob, should happen to die without any lawful heirs of their own,") enlarges the estate for life to an estate tail in each of the two sons; and, by the use of such language, the testator intended an indefinite failure of issue. Purefoy *v.* Rogers, 2 Saunders, 380; Sonday's Case, 9 Coke, 127; King *v.* Rumball, Cro. Jac. 448; Chaddock *v.* Crowley, Cro. Jac. 695; Holmes *v.* Meynel, T. Ray. 452; Forth *v.* Chapman, 1 P. Will. 663; Brice *v.* Smith, Willes's Rep. 1; Hope *v.* Taylor, 1 Burr, 268; Doe *v.* Fonnereau, Doug. 504; Denn *v.* Slater, 5 Term Rep. 335; Doe *v.* Rivers, 7 Ibid. 276; Doe *v.* Ellis, 9 East, 382; Goodridge *v.* Goodridge, 7 Mod. 453; Tenney *v.* Agar, 12 East, 253; Kirkpatrick *v.* Kirkpatrick, 13 Ves. jr. 476; Barlow *v.* Slater, 17 Ves. 479; Romily *v.* James, 6 Taunt. 263; Atkinson *v.* Hutchinson, 3 P. Will. 258; Sheffield *v.* Orrery, 3 Atk. 282;

Lampley *v.* Blower, Ibid. 396; Shepperd *v.* Lessingham, Amb. 122; Gordon *v.* Adolphus, 3 Bro. P. C. 306; Geering *v.* Shenton, Cowper, 410; Peake *v.* Pegden, 2 T. R. 720; Cadogan *v.* Ewart, 7 Ad. & E. 636; Walter *v.* Drew, Com. Rep. 292; Dansey *v.* Griffiths, 4 M. & S. 61; Wallers *v.* Andrews, 2 Bing. 196; Crooke *v.* De Vandes, 9 Ves. 197; Elton *v.* Eason, 19 Ves. 77; Todd *v.* Duesbury, 8 M. & W. 514; Sampson *v.* Sampson, 4 N. C. 333; 2 Fearne, Ex. Dev. 5 Ed. 200; Bamford *v.* Lord, 14 Com. Bench, 707; Newton *v.* Griffiths, 1 Har. & Gill. 111; Bells *v.* Gillespie, 5 Rand, 273; Broaddus *v.* Turner, Ibid. 308; Sydnor *v.* Sydnor, 2 Munf. 263; Cruger *v.* Hayward, 2 Dessaus, 94; Erwin *v.* Dunwood, 17 Serg. & Rawle, 61; Caskey *v.* Brewer, Ibid. 441; Heffner *v.* Knepper, 6 Watts, 18; Patterson *v.* Ellis, 11 Wend. 259; Hunter *v.* Haynes, 1 Wash. 71; Lillebridge *v.* Adie, 1 Mason, 235; Dallam *v.* Dallam, 7 Harr. & John. 220; Eichelberger *v.* Barnitz, 9 Watts, 447; Waples *v.* Harmon, 1 Harring. 223; Jiggetts *v.* Davis, 1 Leigh. 368; Ide *v.* Ide, 5 Mass. 500; Hawley *v.* Northampton, 8 Mass. 3; Nightingale *v.* Burrill, 15 Pick. 104; Adams *v.* Cruft, 14 Pick. 25; Parker *v.* Parker, 5 Met. 134; Wight *v.* Thayer, 1 Gray, 286.

3. Where, by one clause in a will, an estate for life, or an estate in fee-simple, is given by plain words, if it appear in other parts of the will, by explanatory words or by implication, that it was the intent of the testator in such devise that the issue should take the estate in succession after him, then the life estate is enlarged in the one case, and the estate in fee reduced in the other, to an estate tail. Nightingale *v.* Burrill, 15 Pick. 104; Parker *v.* Parker, 5 Met. 134.

4. The words "lawful heirs of their own," mean "heirs of the body lawfully begotten;" and in this will they are technical, and used as words of limitation, restraining the devise to a certain class of heirs, namely, the heirs of the body of either John or Jacob. See authorities under second proposition.

5. That the meaning and intention of the testator, by the use of the words "first decease," was, the one that should *so* first decease; namely, should first decease without heirs of the body lawfully begotten.

6. The testator, by the use of the words "other survivor," meant and intended "other" simply, and thereby showed his especial reference to the children or heirs of the body of either of the devisees; meaning and intending, if either left heirs of the body at any time, they were to take their father's estate according to the will of the testator. 2 Jarman on Wills, 609, 735; Doe *v.* Wainewright, 5 Durn. & E. 427; Anderson *v.* Jackson, 16 Johns. 415; Cole *v.* Sewall, 2 Conn. & Law. 344; Aiton *v.* Brooks, 7 Sim. 204; Harmon *v.* Dickinson, 1 Brown C. C. 82.

7. In a devise of real and personal property, the law makes a distinction as to the two estates, in the construction of devisees; and, when technical language is used, the devisee takes an absolute estate in the personal, and a limited estate, or an estate tail, in the real property. Forth *v.* Chapman, 1 P. Will. 663; Bamford *v.* Lord, 14 Com. Bench, 707, in which all the English cases are collated; Hawley *v.* Northampton, 8 Mass. 3; Nightingale *v.* Burrill, 15 Pick. 104; Adams *v.* Cruft, 14 Pick. 25; Parker *v.* Parker, 5 Met. 134.

8. The use of the word "estate" in the first clause, or in other parts of the will, is not for any technical or specific purpose, but simply directory and descriptive. It was used to designate the fund only out of which the debts and legacies were to be paid. Gardner *v.* Gardner, 3 Mason, 209, and other authorities cited under first proposition.

9. If the testator had not referred to John and Jacob any further than to have given them all his land, &c., to be equally divided between them, and directed John to see that the debts and legacies were paid, they might each have taken a fee-simple by implication; but, having controlled this intent by the proviso in the will, that if either should happen to die without heirs of the body, this creates an estate tail in each son, with cross remainders in fee-simple absolute. Parker *v.* Parker, 5 Met. 134; Bells *v.* Gillespie, 5 Rand. 273; Caskey *v.* Brewer, 17 Serg. & Rawle, 441.

10. If the testator's sons, John and Jacob, took and became seised of an estate in fee-simple, the share of him who should first die without issue would, in that event, go to the other, if living, by way of executory devise; and if the other son was not living, it would go to his heirs.

### Points of Defendants in Error.

The defendants submit, as the proper construction of this will, that it gave to the two sons a fee-simple conditional, with executory devises over, and not an estate tail general, with cross remainders in fee.

That each son took a fee-simple, upon this single contingency: that if the son who died first left no issue, then that his share was to pass to the surviving brother, by way of executory devise.

I. By the first clause, independent of that which devised the estate over, a fee-simple absolute was given to the two sons.

1. Although the devising clause contains no words of inheritance, yet it charges personally one of the devisees with the payment of debts and legacies, by reason of the estate devised, and

therefore carries a fee by implication. Lithgow v. Kavenagh, 9 Mass. 165, 166; Wait v. Belding, 24 Pick. 139.

And as the intent of the testator is clear, that both sons should take the same estate, if John, the executor, took a fee, then Jacob did also. Roe v. Dow, 3 M. & S. 518.

(a.) The direction to pay the debts and legacies out of the estate devised, creates a charge upon the devisee personally, as well as upon the estate. Doe v. Richardson, 3 Term R. 356; Doe v. Snelling, 5 Ibid. 87; Spraker v. Van Alystyne, 18 Wend. 205; Gardner v. Gardner, 3 Mason, 178; 2 Jarman on Wills, 172.

(b.) Moreover, the charge is here imposed " in consideration of what is given the said sons," clearly importing that a personal liability was intended.

(c.) The rule is the same, although the devisee charged is named as executor. Goodtitle v. Maddern, 4 East, 496; Doe v. Holmes, 8 Term R. 1; Doe v. Phillips, 3 B. & Adolph. 753; Dolton v. Hewer, 6 Madd. Ch. R. 9; 2 Jarman on Wills, 172.

2. One of the legacies given is the maintenance of Sarah Dwinnel, a granddaughter, " out of that part of my estate I give to my sons, John and Jacob Kittredge, until she arrives to the age of eighteen years." (Record, p. 6.)

If life estates only were given to the two sons, then the manifest intention of the testator might be defeated, by their dying before she reached that age.

3. The testator directs the legacies to be paid " out of that part of my estate I have given to my two sons."

It is well settled, that a devise of one's " estate " includes all the testator's interest in the subject devised; and this is true, although it is accompanied with words descriptive only of the corpus of the property. Godfrey v. Humphrey, 18 Pick. 537; Paris v. Miller, 5 M. & S. 408; Gardner v. Harding, 3 J. B. Moore, 565; 2 Jarman on Wills, 181, 182.

If then, this expression, " this part of my estate," &c., had been used in the clause making the gift, it would clearly have carried a fee.

But the testator's intention to give a fee is as fairly inferable from his subsequently describing what he has given, as " that part of my estate," &c., as if he had used those words in making the gift.

If the intention to give a fee appears from any part of the will, a fee will pass.

II. The next inquiry is, whether the fee-simple thus given is reduced by the succeeding clause of the will, to an estate tail by implication: Item, " It is my will that if either of my said sons should happen to die without any lawful heirs of his own,

then the share of him who may first decease, shall accrue to the other survivor and his heirs."

This depends upon whether the testator has provided for a definite or indefinite failure of issue.

If he intended a failure of issue at the death of the first taker, then the will gives a fee-simple conditional, and not an estate tail; and the limitation over, not being too remote, is good as an executory devise. Pells *v.* Brown, Cro. Jac. 590, and cases cited *post.*

The defendants contend that this is the proper construction of the will.

The demandants rely upon this rule of construction, namely, that, in a devise, words referring to the death of a person without issue are construed to import an indefinite failure of issue, instead of a failure at the death of such person. 2 Jarman on Wills, 418.

But this rule, taken with its proper qualifications, will not justify the construction which the demandants seek to give this will. This involves,—

1. A brief examination of the rule itself, and of some of its established qualifications.

2. The inquiry, what, if any, is the rule of construction as settled in Massachusetts; and how far it conforms to the rule as established elsewhere.

3. A consideration of the provisions of this will, and the inquiry whether, under the application of the rule thus ascertained, they do not plainly refer to a definite failure of issue.

I. The rule itself is entirely artificial, giving an arbitrary meaning to certain forms of expression, as "dying without issue," and the like. Its application, therefore, should be limited to these settled forms of expression. 2 Jarman on Wills, 418.

1. It is generally conceded that the rule violates the natural meaning of language, and in most cases tends to defeat rather than to give effect to the intentions of testators. 2 Jarman on Wills, 418; Keily *v.* Fowler, Ch. J. Wilmot Notes, &c. 298; Hall *v.* Chaffee, 14 N. H. 216, and cases *post.*

Insomuch, that in England and several of the States, the rule has been abolished by express legislation. 1 Vict. c. 26, § 29, New York R. St.; Virginia, 1819; Miss. 1824; N. C. 1827.

2. Its qualifications.

A limitation "if T. died without issue, living his brother W., then to W." refers to a failure of issue at the death of T. Pells *v.* Brown, Cro. Jac. 590.

So also the words, if one die, "leaving no issue behind him;" Porter *v.* Bradley, 3 Term R. 143; and, if one leave no issue, then life estates, "to the survivor or survivors." Roe *v.* Jeffrey, 7 Term R. 585.

The limitation, in bequests, " to the survivor," has been uniformly held in England to denote a definite failure of issue. Hughes v. Sayer, 1 P. Wm. 534; Ranelagh v. Ranelagh, 2 M. & K. 441; Radford v. Radford, 1 Keen, 486; Lewis on Perpetuities, 218.

Although it may not have been so held in reference to devisees of real estate. See Lewis on Perp. 221.

In the United States, it is settled by numerous authorities, that a limitation, " to the survivor," imports a definite failure of issue, in gifts both of real and personal estate. Fosdick v. Cornell, 1 Johns. R. 440; Anderson v. Jackson, 16 Johns. 382; Jackson v. Chew, 12 Wheat. 153; Wilkes v. Lyon, 2 Cowen, 333; Cutter v. Doughty, 23 Wend. 513; Dawson v. De Forest, 3 Sandf. Ch. R. 456; Heard v. Horton, 1 Denio, 165; Dew v. Schenk, 3 Hals. 29; Cordle v. Cordle, 6 Munf. 455; Rapp v. Kapp, 6 Barr. 45.; Johnson v. Currier, 10 Barr. 498; Morgan v. Morgan, 5 Day, 517; Couch v. Gorham, 1 Conn. 36.

II. The rule in Massachusetts is, that although a devise to one and his heirs, and if he die without issue, then to another, will create an estate tail, with remainder over, yet that this construction will be controlled by other words, showing that the testator referred to a failure at the death of the first taker. Hawley v. Northampton, 8 Mass. 41.

And in conformity with the American doctrine, it has been held, that a limitation to the survivor, denotes a definite failure of issue. Richardson v. Noyes, 2 Mass. 56; See Ide v. Ide et al. 5 Mass. 500.

The case of Parker v. Parker, 5 Met. 134, cannot be considered as having established a rule of construction which controls this case, for these reasons. 12 Wheat. 153.

1. The construction of a will by a state court, does not constitute a rule of decision for this court, unless it has been long acquiesced in as a rule of real property. Lane et al. v. Vick et al. 3 How. 476; Comer v. Brown, 16 How. 354.

2. That decision was made on the ground that the testator did not intend to give more than an estate tail to the sons; whereas, in this case, as already shown, the sons were intended to have a fee.

3. That decision was based upon erroneous principles, and is obviously the result of inadvertence.

(a.) The rule of Purefroy v. Rogers, 2 Saund. 388, on which the opinion was founded, is not a rule of construction, favoring the presumption that the particular estate is an estate tail, rather than a fee-simple. See also Doe v. Morgan, 3 Term R. 763; Nightingale v. Burrill, 15 Pick. 111.

(b.) The opinion proceeded on the mistaken idea, that a limita-

tion over on the failure of issue, necessarily implied that the first taker was to have an estate tail, without referring to the decisive distinction, whether the limitation was upon a definite or indefinite failure of issue. (p. 139.) But see Nightingale *v.* Burrill, 15 Pick. 113.

(*c.*) The conclusion, that the will created an estate tail, was entirely inconsistent with what the court had previously declared, p. 137, to be "the manifest object of the testator;" and that was, to give a fee-simple conditional.

4. That decision cannot control the construction of this will, because the single question upon which this depends, was neither passed upon, nor adverted to; namely, whether a definite or indefinite failure of issue was intended.

If it had been, it is utterly improbable that the court would have come to the result they did; for it is undoubted law everywhere, that a limitation over upon the first taker's dying without issue, and under twenty-one years of age, is clearly upon a definite failure of issue. Pells *v.* Brown, Cro. Jac. 590; Glover *v.* Monckton, 3 Bingh. 13; Doe *v.* Johnson, 16 L. & E. 550; Lippett *v.* Hopkins, 1 Gall. 454; Barnitz *v.* Casey, 7 Cranch, 456; Ray *v.* Enslin, 2 Mass. 554.

5. The provisions of the will in that case, and of the will in this are materially different.

III. This will provides for a definite failure of issue.

1. The language, "if either son should happen to die without heirs," denotes that the testator was contemplating a contingency which would occur, if at all, at the death of such son.

2. The limitation is "to the other survivor."

According to the decision *supra,* a limitation to the "survivor" denotes a definite failure of issue.

But here the limitation is "to the other survivor."

The term survivor, as here employed, cannot be construed to mean "other;" for, as the term "other" is also used, such a construction would deprive "survivor" of all force.

This language shows that the testator referred to the other, personally, as the survivor.

3. It is clear, that a fee-simple, and not an estate tail, is devised over, "to the survivor and his heirs."

It is highly improbable that the testator intended, in the event of the limitation over taking effect, that the son should hold one-half the estate in fee-simple, and the other in fee-tail.

4. It is "the share" of him who may die first, that is devised over.

(*a.*) The term "share," in a devise, denotes all one's interest, and will pass a fee. Paris *v.* Miller, 5 M. & S. 408; Doe *v.* Bacon, 4 M. & S. 366.

(*b.*) Here, a fee-simple is clearly devised over, and it is called "the share" of the first taker. This certainly implies that that "share" was a fee-simple.

(*c.*) The true import of this language is, and the understanding of the testator undoubtedly was, that what is given over, (*i. e.* a fee-simple,) is just exactly what the first taker would have held, had he not died without issue.

5. The devise includes both real and personal estate.

(*a.*) It is very certain that the testator did not intend to limit over the personal property, on an indefinite failure of issue, and from uniting the two in the same clause and in the same contingency, the inference is equally as strong as to the real estate. Porter *v.* Bradley, 3 Term R. 146, and Richardson *v.* Noyes, 2 Mass. 63, are direct authorities.

(*b.*) A distinction has indeed been sometimes made between real and personal estate, but the soundness of this distinction is denied by the weight of authority. *Vide* cases *Supra.*

6. Lastly, it is the share of him "who may first decease," that is devised over.

(*a.*) This language cannot be taken literally, for then the share of the one dying first would go over, although he left issue.

(*b.*) Nor does it mean merely the share of him who may die without issue; for this would disregard the plain provision of the will, that it must be the share of him who dies first.

(*c.*) The testator's meaning is clear; the share of him "who may first decease," is devised over, "if he happens to die without lawful heirs," (*i. e.* issue;) but in no event is any other share devised over, but his who may first decease.

These words, in connection with the fact that the limitation is to the survivor, demonstrate that the testator referred to the period of the death of the first taker.

Mr. Justice GRIER delivered the opinion of the court.

The questions submitted to our consideration in this case arise on the construction of the will of John Kittredge, deceased, and on the following devise to his sons :—

"*Item.* I give to my two sons, namely, John and Jacob Kittredge, all my lands and buildings in Andover aforesaid, excepting the land I gave to my son Thomas aforesaid, which buildings consist of dwelling-houses, barns, corn-house, gristmill, and cider-mill, all of every denomination; also, all my live stock of cattle, horses, sheep and swine, and all my husbandry utensils of every denomination, and all my tools that may be useful for tending the mills aforesaid; and also all my bonds and notes of hand and book accounts, together with what money I may leave at my decease; and my wearing apparel, I

give the same to my said sons, John and Jacob Kittredge, to be equally divided between them ; and in consideration of what I have given my said sons, John and Jacob Kittredge, the executor of this testament, hereinafter named, is hereby ordered to see that all my just debts and funeral charges, together with all the legacies in this will mentioned, be paid out of that part of my estate I have given to my two sons, John and Jacob Kittredge, to whom I give each one bed and bedding.

" *Item.* It is my will, that if either of my said sons, namely, John and Jacob Kittredge, should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs."

On the trial, the demandants requested the court to instruct the jury, " that John and Jacob took the real estate therein devised in equal moieties of an estate tail general, with cross-remainders in fee-simple." But the court instructed the jury, " that the testator's said sons, John and Jacob, took an estate in fee-simple, and that the share of the one of the sons, who should first die without issue, in the lifetime of the other, should, in that event, go over to the other son, by way of executory devise." To this instruction the plaintiffs excepted, and now contend :—

1. That the testator, by the first clause of his will, gave to John and Jacob an estate for life only.

2. That the next clause of the will enlarges the estate for life to an estate-tail in each of the two sons, and, by the use of such language, the testator intended an indefinite failure of issue.

The defendants, on the contrary, maintain that, independent of the last clause, by which the estate is given over, the sons took a fee-simple. And, secondly, that the clear intention of the testator is, that both real and personal estate should pass on a definite contingency, namely, the decease of one brother without issue in the lifetime of the other.

There is, perhaps, no point of testamentary construction which has undergone such frequent discussion, and is so fruitful in cases not easily reconciled, as that now brought under our consideration. This has arisen, in a great measure, from the discrepancy between the popular acceptation of the phrases, " if he die without issue," " in default of issue," and similar expressions, from the established legal acceptation of them in courts of justice. It is often necessary to construe these expressions as conveying an estate tail by implication, in order to carry out the evident general intent of the testator. Such is, or ought to be, the object of all rules of interpretation ; but court rules, however convenient in the disposition of cases where the intention is doubtful, cannot claim to be absolute or of universal application.

Hence it has been said, "that courts have been astute to defeat the application of this rule of construction, harsh in itself, and often producing results contrary to the testator's intention." If wills were always drawn by counsel learned in the law, it would be highly proper that courts should rigidly adhere to precedents, because every such instrument might justly be presumed to have been drawn with reference to them. But, in a country where, from necessity or choice, every man acts as his own scrivener, his will is subject to be perverted by the application of rules of construction of which he was wholly ignorant.

The rule laid down in Purefoy v. Rogers, 2 Saund. 388, "that where a contingency is limited to depend on an estate of freehold which is capable of supporting a remainder, it shall never be construed to be an executory devise," has been received and adopted in Massachusetts.

In England, and in some of the States here, it has been abolished by legislative interposition, as harsh and injurious. This rule, however, has never been construed, either in England or this country, to include cases where the title of the first taker is a fee-simple, and the contingency is definite.

In the case of Pells v. Brown, Cro. Jac. 590, where there was a devise " to A in fee, and, if he die without issue living, then C shall have the land," it was held to be an executory devise to C, on the contingency of A dying in the lifetime of C without issue. There is no necessary conflict between this case and that of Purefoy v. Rogers. It is true, also, that this rule has been applied where the first taker had an estate in fee; and it is conceded, "that, unless there are expressions or circumstances from which it can be collected that these words, 'without issue,' are used in a more confined sense, they are to have their legal sense of an indefinite failure of issue;" but whenever such "expressions or circumstances" show the intention of the testator that the estate is to go over only on a definite contingency, courts will give effect to such intention. Notwithstanding the expressions in Plunket v. Holmes, Sid. 47, derogatory of the case of Pells v. Brown, it has always been considered "a leading case, and the foundation of this branch of the law." See Williams's Saunders, 388, b, in note.

In Porter v. Bradley, 3 T. R. 143, where lands were devised to A and his heirs, and if he die leaving no issue behind him, then over, it was decided that the limitation over was good by way of executory devise; and Lord Kenyon acknowledges the case of Pells v. Brown to be " the foundation and *magna charta* of this branch of the la ," deciding that the words, "leaving no issue behind him," showed clearly that the testator did not contemplate an indefinite failure of issue.

In the case of Roe *v.* Jeffery, 7 T. R. 589, where the devise was " to A and his heirs, and in case he should depart this life and leave no issue, then to B, C, and D, and the survivor or survivors of them, share and share alike," it was held that the devise to B, C, and D, was a good executory devise. In delivering the opinion of the court in that case, Lord Kenyon observes : " This is a question of construction, depending on the intention of the party; and nothing can be clearer than if an estate be given to A in fee, and by way of an executory devise, an estate be given over, which may take place within a life or lives in being, &c., the latter is good by way of executory devise. The question, therefore, in this and similar cases is, whether, from the whole context of the will, we can collect when an estate is given to A and his heirs forever, but if he die without issue, then over, the testator meant without issue living at the death of the first taker. The rule was settled as long ago as in the reign of James I., in the case of Pells *v.* Brown. That case has never been questioned or shaken, and is considered as a cardinal point on this head of the law."

Without referring to any more of the numerous English and American cases brought to our notice by the learned counsel, of like tenor, it will be sufficient to notice the case of Richardson *v.* Noyes, 2 Mass. 56. There the devise was " to my three sons, A, B, and C, all my other lands, &c.; also my will is, that if either of them should die without children, the survivor or survivors of them to hold the interest or share of each or any of them so dying without children as aforesaid ;" and it was held to pass an estate in fee-simple, determinable on the contingency of either of them dying without issue, and vesting by way of executory devise. See also the case of Ray *v.* Enslen, 2 Mass. 554. These cases fully adopt the principles of the English cases we have just referred to. The case of Parker *v.* Parker, 5 Metc. 134, has been quoted as containing a contrary doctrine; but it does not appear that the question of definite or indefinite failure of issue was made by the counsel or adverted to by the court in the decision.

Our inquiry must be, therefore, from an examination of the whole context of this will :—

1. Whether, independent of the second clause, by which the estate is limited over, the sons took an estate in fee-simple, or only a life estate ; and,

2. Whether he intended to give over the share of each son to the other, on the contingency of his death, without issue living at the time of his decease, or upon an indefinite failure of issue.

1. There are no words of inheritance, in this first clause of the devise, to John and Jacob ; but such words are not absolutely

necessary in a will to the gift of a fee. The subject of this de-vise is described as "that part of my estate." The word "estate," or "that part of my estate," has always been construed to de-scribe not only the land devised, but the whole interest of the testator in the subject of the devise; thus, a devise of "my estate, consisting of thirty acres of land, situate, &c.," will carry a fee. Moreover, the legacy given for the maintenance of Sarah Devinny, "to be paid out of that part of my estate given to John and Jacob," would be defeated by their death before she arrived at the age of eighteen, if the devise to them was a life estate only. The intention of a testator must be drawn from the whole context of his will. And it is not necessary to look alone at the words of the gift itself to ascertain the intention of the testator as to the *quantum* of the estate devised, if it can be gathered, from expressions used in any part of it, what he sup-posed or intended to be the nature and extent of it. It will not admit of a doubt, also, that the testator intended that both of his sons should have the same estate in the devised premises, which were "to be equally divided between them." John is charged personally, in respect of the estate given him, with the payment of all the debts and legacies. The testator calls it the "consid-eration" to be paid for that part of his estate given to his two sons; and though John was appointed executor, whose duty it became, as such, to see to the payment of the debts and lega-cies, the charges are to be paid by him at all events out of the estate devised to him and Jacob, and not out of the rents and profits only. By their acceptance of the devise, they became personally liable. In such cases, it is well settled that the devisee takes a fee, without words of inheritance.

On this point, therefore, we are of opinion that John and Jacob each took a fee in their respective "share" or moiety of the estate devised to them.

2. It remains to consider the effect of the second clause of the will, which is in these words : " It is my will, that, if either of my said sons, namely, John or Jacob, should happen to die with-out any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs."

Viewing this clause free from the confusion of mind produced by the numerous conflicting decisions of courts, and untram-melled by artificial rules of construction, we think that no two minds could differ as to the clear intention of the testator. By " lawful heirs of their own," he evidently meant lineal descend-ants or " issue."

The contingency contemplated is as definite as language can make it—" if either son should happen to die without heirs of their own during the life of the other."

The person to take, on the happening of this contingency, is precisely described—"the other survivor." It is true, that cases may be found which decide that the term "survivor" does not of itself necessarily import a definite failure of issue, and no doubt there are many cases where it would be necessary to disregard the obvious import of this term, in order to carry out the general intent of a testator, otherwise apparent; but a large number of English, and nearly all the American, cases acknowledge the force of this term as evidence of the testator's intending a definite contingency. The other words of this clause, connected with it, clearly describe a definite contingency, and the individual who is to take on its happening: "the share of him who shall first decease without heirs shall accrue to the other survivor;"—on the death of one, the other is to take—a definite contingency and a definite individual.

Again, it is the "share," or the estate previously given, not of him who dies without issue, generally, but of him who may first decease, that is given over to the other survivor. This "share" also consisted of personal and real property. As to the former, the testator could certainly not mean an indefinite failure of issue, yet both, personalty and realty, are within the same category, and, as one "share," they are subject to the same contingency. It is said to be a rule of construction, that the words "dying without issue," will be construed to mean "an indefinite failure of issue" as to real estate; but with regard to personalty, it shall be taken to mean "a failure at the death." There are several cases to this effect. Lord Kenyon, in speaking of them in Roe *v.* Jeffery, very justly remarks that "the distinction taken in Forth *v.* Chapman, 1 P. Wms. 663, that the very same words in a will should receive one construction when applied to one portion of the devise, and another construction as applied to another, is not reconcilable with reason." Without making an array of cases, we may state that many of the English, and nearly all the American cases, seem to concur in the truth and force of this observation; and consider a "share" of an estate, consisting of both realty and personalty, given over on a contingency to the "survivor," as clear evidence that the testator did not intend an indefinite failure of issue. A rule of construction which would give different meanings to the same words, in the same sentence, could only be tolerated where, from the whole context of the will, it is evident that without such construction the general intent of the testator as to the disposition of his realty would be frustrated.

Lastly, construing this clause as providing for an indefinite failure of issue, and as vesting each of the sons with an estate tail by implication, the survivor would take an estate in fee-

simple in his brother's share, while he had an estate in tail in his own ; a result most improbable, which could hardly have been contemplated by the testator, and which ought not to be imputed to him without clear expressions indicating such an intention.

On the whole, we are of opinion that the instructions given to the jury by the court below are correct, and that the judgment should be affirmed.