# McCAFFREY v. MANOGUE.

WILLS; LIFE ESTATE, WHEN ENLARGED INTO A FEE.

1. The rule of law that a simple devise of land, without words of limitation or description of the extent of the interest devised, creates a life estate only, cannot be made to yield to the rule of construction founded on the disfavor with which partial intestacy is regarded; but to enlarge the estate into a fee does not require the use of technical terms or any particular form of words. Any words which will sufficiently show the intention of the testator to create more than a life estate will be given that effect, no matter what their form may be, and the whole will may be looked into in order to ascertain the meaning to be given to this particular part; following *McAleer* v. *Schneider,* 2 App. D. C. 461.

2. When a devise of lands without words of limitation or description of the extent of the estate to be taken is coupled with a personal charge upon the devisee, in effect a condition of the devise, the operation of such a charge is to enlarge the life estate that would otherwise pass, into a fee simple.

3. Where a will contained six separate devises of real estate to the testator's sons and daughters and a grandson, without words of limitation or description of the extent of the interest devised, and the first devise, which was to a daughter, and which was apparently of an excessive share of the real estate, was immediately followed by a bequest to her of the testator's money in bank, money due him, and his building association stock, which comprised substantially the whole of his personal estate, and a direction that she was to pay the funeral expenses and any other legal debts the testator might owe and also to care for his cemetery lot, and such bequest amounted to a sum considerably in excess of the funeral expenses and debts; it was *held* (1) that, under the circumstances, the practical effect of the bequest to and charge upon the first devisee was the same as if the testator had expressly directed the payment of the funeral expenses and debts to be made *out* of the personal estate, or had made the bequest of the same *after* payment of such expenses and debts; and (2) that such charge upon the first devisee did not operate to enlarge the devise to her into a fee, and that she and the other devisees took life estates only in the land.

No. 1318.   Submitted June 4, 1903.   Decided June 25, 1903.

HEARING on an appeal by the complainants from a decree of
VOL. XXII—25

the Supreme Court of the District of Columbia in a suit to construe a last will and testament. *Affirmed.*

The COURT in the opinion stated the case as follows:

This bill was filed by William H. and James B. McCaffrey to obtain a construction of the will of Hugh McCaffrey, deceased. Among the complainants and defendants are included all the heirs at law of said Hugh McCaffrey, as well as certain persons claiming under one or more of them through devise and purchase.

The will is in the following words:

"WASHINGTON, DISTRICT OF COLUMBIA,

"April thirtieth, 1896.

"In the name of God, being now in good health and sound in mind and body I hereby certify and declare this to be my last will and testament, hereby annulling and revoking any and all wills previously made.

"I give and bequeath to my daughter Mary A. Quigley house number 301 at southwest corner of 11th and C streets southeast, being in lot number 5, in square 970, with the store and dwelling, stock and fixtures, and lot on which it stands, also houses numbers 13 and 15, 6th street southeast with lots on which they stand, being parts of lots 19 and 20 in square number 841, also any money in bank to my account at the time of my death, also any money due to me, also any building association stock. She is to pay funeral expencies and any other legal debts I may owe, also to care for my lot in Mount Olivet cemetrey.

"I give and bequeath to my son, James B. McCaffrey, house number six hundred and two (602) East Capitol street and lot on which it stands, being in lot number ten (10) in square number eight hundred and sixty-eight (868).

"To my son, William H. McCaffrey, I give and bequeath house 604 East Capitol street, being in lot number ten (10), in square number eight hundred and sixty-eight (868) and lot on which it stands.

"To my daughter, Lizzie Manogue, I give and bequeath house number fourteen hundred and twenty-three (1423) Corcoran street N. W., and lot on which it stands, being lot number fifty-four (54) in square number two hundred and eight (208).

"2. To my son, Francis T. McCaffrey, I give and bequeath house five hundred and nineteen (519) East Capitol street, and lot on which it stands, being part of lot number twenty (20) in square eight hundred and forty-one (841), also my horse and buggy.

"And to my grandson, Frank Foley, I give and bequeath house number one hundred and twenty-one (121) Eleventh street S. E., being in lot number fourteen (14), square number nine hundred and sixty-eight (968), and lot on which it stands.

"To my grandson Joseph Quigley, I give and bequeath my watch and chain.

"I hereby name and appoint as executors of this my last will and testament, John E. Herrell and Patrick Maloney.

"All the real estate herein described is located in the city of Washington, District of Columbia.

"HUGH McCAFFREY. [SEAL.]"

The lands described in the said will were all owned in fee simple by the testator at the date thereof and at his decease.

The will was admitted to probate after a contest by some of the heirs at law, and the final report of the executors thereof shows that after the payment of all debts, and expenses of administration and litigation, there remained a balance of $2,050.-94 from the proceeds of the personal estate, which was paid over to the legatee, Mary A. Quigley.

Frank T. McCaffrey, one of the devisees of Hugh McCaffrey, died October 28, 1898, without issue, and leaving a will in which he devised all of his estate to his sister, Lizzie C. Manogue, and his brothers, the complainants, to hold as tenants in common in fee simple.

James B. McCaffrey conveyed to the defendant, George W. Manogue, the lot devised to him by Hugh McCaffrey, together with all other interest in the estate of the testator. At the time

of the death of Francis T. McCaffrey he was in possession of the premises, part of lot 20 in square 841, devised to him by Hugh McCaffrey, claiming to own and hold the same in fee simple. The aforenamed devisees of Francis T. McCaffrey obtained a decree for the sale of the said premises, for partition among them. A sale was made by trustees to one Little, who refused to complete the same on the ground that the title was defective in that Francis T. McCaffrey took only a life estate under the will of Hugh McCaffrey. A proceeding was begun to compel performance, which was denied on the ground that the purchaser ought not to be compelled to take a doubtful title. *McCaffrey v. Little,* 20 App. D. C. 116.

The question of title was not decided in that case, because the majority of the parties interested in the question generally as devisees in said will were not parties to the proceeding.

This bill to obtain construction and quiet title is the sequel of that proceeding.

The contention of the complainants is that each of the devisees in the will of Hugh McCaffrey, under a proper construction of that will, took an estate in fee simple.

Upon the hearing in the court below the presiding justice was of the opinion that the several devisees in the will of Hugh Mc-Caffrey "took and acquired each only an estate for his or her life respectively in the several and respective pieces and parcels of real estate therein devised, and not an estate in fee simple, and that neither of said devisees was enlarged from such life estate to a fee simple by reason of anything in said will contained, or by reason of any charge made, or duty imposed, in and by the terms thereof, upon Mary A. Quigley, one of the devisees therein named."

From a final decree in accordance with this conclusion the complainants have taken this appeal.

*Mr. O. B. Hallam, Mr. W. M. Hallam,* and *Mr. A. A. Birney,* for the appellants:

1. In case of a mixed devise and bequest, in the same clause,

the condition or charge will be held to relate to the realty as well as to the personalty, regardless of the order in which they are enumerated, and regardless of the value of the personalty. *Doe* v. *Holmes,* 8 Durnford & East, 1; *Abbott* v. *Essex Co.* 18 How. 202.

The appellees, it is true, have shown that the personalty was sufficient to pay the charges imposed on Mrs. Quigley, except the uncertain continuing charge to care for the testator's cemetery lot; but that testimony is entirely irrelevant. *West* v. *Fitz,* 109 Ill. 438; 3 Powell on Devises (by Jarman), 379; *Lithgow* v. *Kavanaugh,* 9 Mass. 161; *Farrar* v. *Ayres,* 8 Pick. (Mass.) 404; 3 Jarman on Wills, 23.

2. It is also established that where, from the fact of such condition in one of several devises, it is manifest the testator intended to pass a fee in such devise, the fact that in the others he has used similar terms (although without attaching conditions), will, in the absence of words of contrary import, establish a like intent in those other devises, and the beneficiaries will take in fee. The precise point was passed upon in *Cook* v. *Homes,* 11 Mass. 529 (decided in 1814). See also *Butler* v. *Butler,* 2 Mackey, 96, 104. In the case at bar the intention of the testator to devise a fee to each devisee cannot be doubted. He was providing for *all his heirs,* dividing his estate among them; it is not in the least probable that his purpose was to give none of them in fee, and yet make no disposition over of a remainder.

*Mr. Edwin Forrest* and *Mr. A. A. Hoehling, Jr.,* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

It is a well-settled rule of law that a simple devise of land in this District, without words of limitation or description of the extent of the interest devised, creates a life estate only. And this rule of law can not be made to yield to the rule of construction founded on the disfavor with which partial intestacy is regarded. *McAleer* v. *Schneider,* 2 App. D. C. 461, 467. "At the same time," as was said in that case, "to enlarge the estate

into a fee does not require the use of technical terms or any particular form of words. Any words which will sufficiently show the intention of the testator to create more than a life estate will be given that effect, no matter what their form may be, and the whole will may be looked into in order to ascertain the meaning to be given to this particular part."

Six separate devises are contained in the will of Hugh McCaffrey, and in no one of them are there words either indicating in themselves an intention of the testator, or forming room for a construction that would prevent the operation of the positive rule of law above stated, unless they may be found in the first item in which a bequest of personal property to Mary A. Quigley follows the devise of a part of the real estate.

These words are contained in the last sentence of the item for her benefit, which reads as follows: "She is to pay funeral expenses and any other legal debts I may owe; also to care for my lot in Mount Olivet Cemetery."

It is contended that these words, by operation of another established rule of construction, not only enlarge the previous devise to Mary A. Quigley, but also each subsequent uncharged devise into a fee-simple estate.

That rule is that where a devise of lands without words of limitation or description of the extent of the estate to be taken is coupled with a personal charge upon the devisee, in effect a condition of the devise, the operation of such a charge is to enlarge the life estate that would otherwise pass into a fee simple.

As thus stated, the rule has been generally recognized since its enouncement in *Collier's Case,* 6 Coke, 16. It is enough for us to say that it has the sanction of the Supreme Court of the United States. *Wright* v. *Denn ex dem. Page,* 10 Wheat. 203, 231, 6 L. ed. 303, 310; *Abbott* v. *Essex Co.* 18 How. 202, 215, 15 L. ed. 352, 356.

The difficulty which we encounter in this case is not in the ascertainment of the rule, but in its application to the language of the inartificial will that is the subject of construction. Owing to the very nature of wills, and the fact that they are largely drawn by unskilled persons, it is difficult also to find a decided

case applying a well-known rule of construction to the particular language of one will that will furnish a certain and complete guide for the interpretation of another. The decisions which have been urged on behalf of the appellant as controlling do not furnish us such a guide. In *Abbott* v. *Essex Co.* 18 How. 211, 15 L. ed. 354, the devise construed read thus:

"Item. I give to my two sons, namely John and Jacob Kittredge, all my lands and buildings in Andover aforesaid, excepting the land I give to my son Thomas aforesaid, which buildings consist of dwelling houses, barns, corn-house, grist mill, and cider-mill, all of every denomination; also all my live stock of cattle, horses, sheep, and swine, and all my husbandry utensils of every denomination, and all my tools that may be useful for tending the mills aforesaid; and also all my bonds and notes of hand and book accounts, together with what money I may leave at my decease; and my wearing apparel, I give the same to my said sons John and Jacob Kittredge, to be equally divided between them; and in consideration of what I have given my said sons John and Jacob Kittredge, the executor of this testament, hereinafter named, is hereby ordered to see that all my just debts and funeral charges, together with all the legacies in this will mentioned, be paid out of that part of my estate I have given to my two sons John and Jacob Kittredge, to whom I give each one bed and bedding.

"Item. It is my will, that if either of my said sons, namely, John and Jacob Kittredge, should happen to die without any lawful heirs of their own, then the share of him who may first decease shall accrue to the other survivor and his heirs."

The substantial differences between that devise and the one under consideration here cannot be better illustrated than by quoting the language of Mr. Justice Grier in giving construction to it, in which appears, also, the statement of the rule before mentioned:

"There are no words of inheritance in this first clause of the devise to John and Jacob; but such words are not absolutely necessary in a will to the gift of a fee. The subject of this devise is described as 'that part of my estate.' The word 'estate,'

or 'that part of my estate,' has always been construed to describe, not only the land devised, but the whole interest of the testator in the subject of the devise; thus, a devise of 'my estate consisting of thirty acres of land, situate, etc.,' will carry a fee. Moreover, the legacy given for the maintenance of Sarah Devinny, 'to be paid out of that part of my estate given to John and Jacob,' would be defeated by their death before she arrived at the age of 18, if the devise to them was a life estate only. The intention of a testator must be drawn from the whole context of his will, And it is not necessary to look alone at the words of the gift itself to ascertain the intention of the testator as to the *quantum* of the estate devised, if it can be gathered from expressions used in any part of it, what he supposed or intended to be the nature and extent of it. It will not admit of a doubt, also, that the testator intended that both of his sons should have the same estate in the devised premises which were 'to be equally divided between them.' John is charged personally, in respect of the estate given him, with the payment of all the debts and legacies. The testator calls it the 'consideration' to be paid for that part of his estate given to his two sons, and though John was appointed executor, whose duty it became, as such, to see to the payment of the debts and legacies, the charges are to be paid by him at all events out of the estate devised to him and Jacob, and not out of the rents and profits only. By their acceptance of the devise they became personally liable. In such cases it is well settled that the devisee takes a fee, without words of inheritance."

It is unnecessary to refer to the second item above quoted as also illustrating the general intention of the testator.

In the case at bar the devise is first to Mary A. Quigley of specific parcels of land, followed immediately by the bequest of money in bank, or due, and the building association stock, which, as we have seen, comprised substantially the whole of the personal estate of the testator. Then follows the separate sentence, —quoted above,—relating to her payment of his funeral expenses and legal debts. The part relating to care of cemetery lot may be dismissed as scarcely an enforceable trust or charge.

The bequest, as we have seen also, amounted to a considerable

sum in excess of the funeral expenses and debts, including also the unanticipated expense attending a contest of the will.

This personalty was, of course, the primary fund for the discharge of these obligations, and there were no legacies charged upon the estate at all.

When we look to the remaining devises, five in number, we find that, instead of aiding the construction as to be given item 1, they seem to militate against it. They are simple devises of specific lands and nothing more, and the language to that extent is identical with the words of the devise in item 1.

This being the case, the appellants have been compelled to contend, also, that these devisees took in fee, because the additional words in item 1 enlarged the life estate therein to a fee. This construction is the necessary incident of the first, or else we contemplate the testator as artfully giving the greater part of his estate to Mary A. Quigley in fee and leaving her free to claim an heir's portion in the remaining devises after the limitation of the estate for life.

On the other hand, would it not be more reasonable and just to infer that the testator, who certainly knew that a large surplus would remain of the personal estate given to Mary A. Quigley after discharging the small debts and funeral expenses directed to be paid by her, had no idea of subjecting her to a charge in respect of the previously devised real estate?

. To reinforce their argument counsel advert to the rule of construction founded on the presumption against partial intestacy; but this, as we have seen, cannot be made to override the positive rule of law that requires either express words of limitation or language reasonably indicating an intention to create more than a life estate.

Concede it to be probable that the unlearned testator supposed he was giving a fee in each devise by the terms used, yet that supposition cannot be invoked to control the settled meaning of his language. As was said by Mr. Justice Story in *Wright* v. *Denn ex dem. Page,* 10 Wheat. 204, 228, 6 L. ed. 303, 309 : "It is not sufficient that the court may entertain a private belief that the testator intended a fee; it must see that he has expressed that

intention, with reasonable certainty, on the face of his will, for the law will not suffer the heir to be disinherited upon conjecture. He is favored by its policy; and, though the testator may disinherit him, yet the law will execute that intention only when it is put in a clear and unambiguous shape."

Upon the point that, if the first devise be enlarged by the charge imposed upon the devisee, the same enlargement must follow in all the subsequent devises, counsel rely strongly upon the case of *Cook* v. *Holmes,* 11 Mass. 528. In that case two parcels were devised to children conditioned upon their payment of certain charges, and the third to a grandson without condition; no words of inheritance were used. The effect of the charge in the first two was held to indicate an intention to give the fee, and it was also held that the grandson took in fee; but not because of the construction given to the first two.

An examination of the opinion shows that the court found numerous expressions in other parts of the will indicating the intention of the testator to devise the fee throughout; and reciting some of the other items, pointed out certain results that would follow a contrary construction, saying of one of these: "This would be an absurdity which ought not to be imputed to the testator."

Were it, then, conceded that the effect of the charge upon Mary A. Quigley was to enlarge the devise to her into a fee, we would be constrained to deny its operation as working the enlargement of the remaining devises. Giving it this limited effect would work the injustice of securing to her and her heirs a large part of the estate, and then letting her, or them, in to claim an equal share in the reversion upon the termination of the life estates of the remaining devisees. We cannot presume that this result was within the contemplation of the testator.

As we have before suggested, the testator died practically free from debt; he knew of what his personal property consisted when he gave it all, substantially, to Mary A. Quigley, in connection with an apparently excessive share of his landed property; and that a large surplus must necessarily remain to her after the discharge of all possible demands and expenses. Presumably,

he knew that this personal property was first charged by law with the payment of debts and expenses. Having made the devise and bequest in one sentence, he then added the separate sentence: "She is to pay funeral expenses, and any other legal debts I may owe," etc.

Under all the surrounding circumstances, the practical·effect of this clause would seem to be the same, substantially, as if he had expressly directed the payment to be made *out* of said personal estate, or had made the bequest of the same *after* the payment of funeral expenses and debts.

The following cases, while not directly in point, tend to support this conclusion. *Moor* v. *Denn ex dem. Mellor,* 2 Bos. & P. 247, 253; *Jackson ex dem. Harris* v. *Harris,* 8 Johns. 141, 146.

Believing that the construction decreed by the learned justice who presided at the hearing comes nearer carrying out the intention of the testator than any other that is permitted by positive rules of law which we must follow, and comes nearer doing complete justice between all the parties at interest than any other that might be given, his decree will be affirmed. It is so ordered, and that the costs be taxed against all the parties in the proportion as their interests may appear, and that the cause be remanded to the court below that the costs may be apportioned in accordance with this decision.                    *Affirmed.*