ROBERT REID *et al.*

*v.*

W. T. V. D. VOORHEES, EXR. *et al.*

*Opinion filed June 23, 1905.*

1. WILLS—*a devise void for perpetuity cannot be sustained in part.* Where the terms of a devise are clear and unambigous and the same create a perpetuity, the language which creates the perpetuity cannot be rejected and the devise sustained by construction as to the part not within the rule against perpetuities.

2. SAME—*when words cannot be supplied or rejected.* If the scheme manifested by a will for the disposition of property is clear and harmonious in all its parts, the only objection being that one provision of the will violates the rule against perpetuities, the court cannot reject words or supply them, but must consider the will according to the law and hold the provision void.

3. SAME—*when provisions of will are void as creating a perpetuity.* Clauses of a will bequeathing to certain persons equal shares of the rents collected on certain land for a period of thirty years and devising the land itself to the same persons thirty years after the testator's death are both void, as creating perpetuities.

4. SAME—*rule where certain provisions of will are void.* Where certain provisions of a will are void, other provisions which are valid in themselves must be rejected if they are so dependent upon the void provisions that the general scheme of the testator for disposing of his property would be defeated by sustaining them; but valid provisions unconnected with and forming no part of the general scheme attempted to be carried out by the void provisions may be sustained.

APPEAL from the Circuit Court of Fulton county; the Hon. G. W. THOMPSON, Judge, presiding.

On January 25, 1904, James Reid, a resident of Fulton county, died leaving a last will, which was subsequently probated and admitted to record in that county, and is as follows:

*"Know all men by these presents,* that I, James Reid, of Young Hickory township, in the county of Fulton and State of Illinois, being in good health of body and sound and disposing state of mind and memory, and being desirous of settling my worldly affairs while I have strength and capacity, do make and publish this my last will and testament.

*"First*—I direct my executor hereinafter named to pay all my just debts and funeral expenses from my personal property not hereinafter disposed of.

*"Second*—I give and bequeath the remainder of my personal property after my personal estate is properly settled up, divided equally, to John Blactley, of the town of Ardric, county of Sanrit, Scotland, and Daniel Blactley, of Glasgow, Scotland, they to share equally alike.

*"Third*—I give and bequeath to my nephews, Robert Reid, William Reid, John Reid, Roy Reid, and my nieces, Ann Knickerbarker and Rose Frederick, all of the county of Fulton, State of Illinois, the rents·that is collected by my executor from my real estate hereinafter described, the said rents to be divided equally among the above named nephews and nieces, and to be paid to them yearly (if so collected) for a period of thirty years. In case any of the above named should die without an heir, his or her share to go to the living heirs. The description of my real estate in Young Hickory township, Fulton county, Illinois, is, viz.: The north half of the north half of the north-east of the north-west of section 33, 8 N. 2, east; also west half N. E. sec. 28, all in Young Hickory township; also thirty acres S. E. corner of S. E. sec. 20, in Ellisville township, Fulton county, Illinois.

"*Fourth*—After my death I give to Rose E. Frederick my undivided interest in her father's estate now occupied by her mother, said interest to be given her as soon as convenient.

"*Fifth*—Thirty years after my death I give and bequeath to my above named nephews and nieces, or their heirs, and if no heirs to be divided equally among the surviving heirs, all of my above described real estate, to be divided equally among them, said real estate to be sold and the proceeds of sale divided equally.

"*Lastly,* I appoint W. T. V. D. Voorhees, of Fairview, Ill., as my executor, and if for any cause said named executor cannot act all the time named in this will, he to name or appoint some other party to fill the time herein named. In case he cannot name one, then the court to name one."

At the May term of the circuit court of said county the appellants, being the devisees mentioned in the third and fifth clauses of the will, filed their bill to have said will construed and for partition of the lands therein described and devised. John Blactley and Daniel Blactley, (correctly described or named in the bill by the surname of Blackley,) the devisees named in the second clause of the will, and W. T. V. D. Voorhees, the executor, were made parties defendant. The bill alleged that the testator died leaving no widow and no child or children or descendants thereof; and that the devisees named in the will are his only heirs-at-law; that he died seized of the land described in the will, and that that was all of the land owned by him; that the legal effect of said will was to convey the property to the complainants in the bill, as tenants in common, in fee, for the reason that the fifth clause created a perpetuity, and that by giving the third clause its proper legal effect the complainants in the bill would take as tenants in common in fee. It was further alleged that the testator died possessed of $7000 of personal estate; that his indebtedness and the cost of administration would not exceed $1000, and would leave

a net surplus of $6000; that the land described in the will was worth $6000; that the complainants in the bill were children of a deceased brother of the testator, and that Daniel and John Blackley were children of a deceased sister of the testator, and that it was his intention and purpose in making the will to divide his property equally between the complainants, as the representatives of his deceased brother, and the Blackleys, as the representatives of his deceased sister.

John and Daniel Blackley were served by publication and filed their answer to the bill, which they subsequently withdrew and by their default confessed the bill. The executor filed an answer, in which he admitted the facts alleged in the bill but denied that the construction of the will contended for by the complainants was a correct one; denied that the fifth clause of the will was void or that the proper construction of the third clause was to vest the fee in the complainants in the bill.

The cause was referred to the master, who took evidence as to the value of the estate and of the relationship of the devisees in the will, and that, together with the stipulations, all of which supported the allegations of facts contained in the bill, was reported to the chancellor. The cause was heard and a decree entered, in which it was found that both the third and fifth clauses of the will were void as creating a perpetuity in the lands therein mentioned, and all the other clauses of the will were sustained as valid, and partition of the land was decreed between the complainants to the bill and defendants John Blackley and Daniel Blackley. From this decree appellants, who were the complainants below, prosecute this appeal, and urge that the decree is contrary to the evidence and also contrary to the law and equity.

MARVIN T. ROBISON, for appellants.

LUCIEN GRAY, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

Counsel for the appellants and counsel for the appellees are agreed that clause 5 of the will of James Reid offends the rule against perpetuities and is for that reason invalid. Counsel for appellees also contends that clause 3 of the will is invalid for the same vice and reason, and counsel for appellants admits that as said clause stands, and without rejecting certain portions thereof, it is too remote and falls within the rule against perpetuities. But counsel for appellants points out and urges that by said third clause there is a clear gift of the rents and profits and a specific direction as to their application or division, and also a direction to pay, and a disposition over in case of the death of either of the persons named as takers, and argues that a devise of the rents and profits of land is a devise of the land itself, and that in a case such as this, where the fifth clause is admitted to be and must be held void and no other disposition of the real estate remains by the provisions of the will, the court should expunge or reject the limitation of thirty years found in that clause and read it as though it were a gift of the rents and profits of the land for an indefinite time to the devisees, and thereby give it the effect of a conveyance of the fee.

In support of this contention three classes of cases are cited. The first class is where the fee is clearly devised to a particular person or persons in one clause of the will and it is attempted by a subsequent provision in the same or some other clause to impose a limitation or condition upon the estate previously granted. Among the cases falling within this class is *Chapman* v. *Cheney,* 191 Ill. 574. By the first part of the seventh clause of the will of Prentiss D. Cheney a clear devise in fee simple of the *corpus* of all of the testator's real and personal estate was made to his grandchildren. Later on, in the same clause, it was attempted to limit the vesting of the estate of inheritance in said property to said grandchildren by making it conditional upon their living to attain the age of thirty years, and if any grandchild

did not attain the age of thirty years and died before that
time leaving issue, the latter might take. The limitation
over or attempted restriction was held void for remoteness
and for that reason was rejected. (2 Jarman on Wills,—
5th ed.—491.)

*Post* v. *Rohrbach,* 142 Ill. 600, urged as an authority in
this case, also falls within the above·class. In the fourth
clause of the will in that case there was an unconditional
devise of the land *in præsenti* to Mary Matilda Rohrbach,
a daughter of the testator. By the eighth clause the testator
attempted to limit the grant contained in the fourth clause
by the provision that if the daughter, Mary Matilda, should
die without children or the issue of children, and if she
should die leaving children or issue of children and they
should die without issue, then the portion so bequeathed to
the children of the testator should revert to such children
or grandchildren as might be living. The limitation over
was held to be an executory devise but void for remoteness,
and the original devise in clause 4 was left in force, unaf-
fected by the limitation over.

The second class of cases are those wherein the testator,
although giving sufficient general description of the person
to take or the property devised, uses language that makes
either the donee or the subject of the grant doubtful, in
which cases, by construction, the doubtful words were elimi-
nated or rejected where sufficient was found remaining in
the will to give it effect according to the intention of the
testator. Among those cases is *Whitcomb* v. *Rodman,* 156
Ill. 116.

The third class of cases are those wherein devises are
made of the use of rents and profits of land generally, where-
in it is held that such devises are devises of the land, among
which are *Ryan* v. *Allen,* 120 Ill. 648, and *Zimmer* v. *Sen-
nott,* 134 id. 505. In the *Ryan case* the words of the will
are: "I give and bequeath to my step-son, Omar H. Allen,
the use or rents accruing from my house and one acre of
216   16

land that the house stands upon, after his father's decease, provided his father does not sell said property, which privilege I grant him provided it is necessary for his maintenance. After the said Omar H. Allen's decease the said house and land to go to his nearest heirs." It was held that Omar H. Allen took the fee.

But in none of the cases cited, nor in any case that we have been able to find, has it been held that where the terms of the devise are clear but are obnoxious to the rule against perpetuities, and therefore void, the language or part of the devise which creates a perpetuity can be rejected and by mere construction the devise be sustained. In fact, we understand the rule to be otherwise. In *Lawrence* v. *Smith,* 163 Ill. 149, the testator vested his estate in a trustee, and in the twelfth, thirteenth and fourteenth clauses of the will made provision for three of his children. The clauses were all substantially alike, and directed the trustee to pay from his estate an annuity of $600 to each child for life, and after the death of said children to pay to the children of said children $300 and until the said children (grandchildren) of the testator should arrive at the age of twenty-five years. At that time the trustee was directed to pay to each of his grandchildren $10,000 discharged of the trust. It was there contended that the provision as to the grandchildren was void for remoteness, and it was replied that as there was a residuary clause directing the trustee, when the trust had terminated, to pay the whole of his funds to his grandchildren discharged of the trust, the specific clause in the several devises to the children and grandchildren should be rejected and effect given to the residuary clause, so as to treat the trust as terminated at the time of the death of the children of the testator. In reply to this the court said (p. 161) : "But such was not the intention expressed by the testator in his will, and such a construction would tend to abrogate the rule against perpetuities altogether, whereas it is the duty of courts to give it effect and not to destroy its efficacy by adverse construction,"

citing authorities. In *Post* v. *Rohrbach, supra,* it was said
(p. 606) : "Counsel for appellees seek, however, to apply
the *cy pres* rule of construction here. But a limitation void
because it offends the doctrine of perpetuity will be void
altogether, and cannot be held, under the *cy pres* rule of
construction, to be good as to that part which keeps within
the period of perpetuity, and void only as to the excess," ·
citing Tiedeman on Real Prop. sec. 544, and 2 Washburn
on Real Prop. 702, 703. To like effect is *Knox* v. *Jones,* 47
N. Y. 398.

The cases cited wherein words and clauses were rejected
and effect given to the will were in instances where either
a valid devise was attempted to be limited by an invalid
limitation or condition, or where a rejected portion . was
absolutely in conflict and irreconcilable with the general
provisions of the will. In all such cases the conflict or re-
pugnancy appeared on the face of the will, and the action of
the court in those cases was in keeping with the general rule
applicable thereto. The rule stated in the books is as follows :
"Words and passages absolutely irreconcilable with the gen-
eral context may be rejected, but not upon mere conjecture
nor unless absolutely irreconcilable with the context, even
though their retention may sometimes produce rather ab-
surd consequences."· (29 Am. & Eng. Ency. of Law,—
1st ed.—371; 2 Jarman on Wills,—5th Am. ed.—56.) We
have found no case where a single general provision or de-
vise was unlawful or void for remoteness, in which the court
felt authorized to disregard or reject the offending portion
so as to give an effect to the provision that the testator did
not intend it should have. *Knox* v. *Jones, supra.*

Examining the will in the case at bar in the light·of the
rule, the conclusion is irresistible that we are not authorized
to reject any portion of it. The scheme of disposition that
the testator attempted to and did provide for in his will was,
that the lands should be held by his trustee or executor for
thirty years; that he should collect the rents and profits of

the lands during that time and divide them equally among the appellants, and at the expiration of thirty years he should sell the lands and divide the proceeds among appellants or their heirs, or the survivors of them. There is no present grant of the *corpus* to the appellants, but the grant is preceded by the expression, "thirty years after my death," etc. The intention is further evidenced by the last provision of the will that refers to the executor, wherein it is said that if he cannot act all the time named in the will he may appoint some other party to fill the time therein named. When this last provision and the third and fifth clauses of the will are read and considered together there is nothing found in the will with reference to the real estate that is either irreconcilable with or repugnant to the general context of the will, but, on the other hand, the whole scheme as entertained by the testator and manifested by his will is harmonious in all of its parts, and the only vice contained in it or objection that can be urged against it is that it is contrary to the rule against perpetuities. Under such circumstances and in such a case the court is not authorized to reject words or supply them, but its duty is to consider the will according to the law and to hold the provision void because it offends against the law.

Appellants urge that if the third and fifth clauses are both held to be invalid then the court should reject the second clause although valid, and apply the rule that valid clauses in a will will be rejected with the invalid ones where the retention of them would defeat the testator's wishes as evidenced by the general scheme adopted or where manifest injustice would result to the beneficiaries. In support of this contention the appellants direct the attention of the court to the facts, which show that the testator had no near kinsman other than the appellants and the Blackleys; that each set of children stood in the same relation to him, the Blackleys being the children of a sister and the appellants the children of a brother; that he had substantially equal amounts of

personal and real property; that while the personalty did exceed, to some extent, the realty, after the payment of the debts and the cost of administration the provisions for the two sets of children would practically be equal, and that the will, in the light of these facts, manifests the desire of the testator to divide his estate equally between the representatives of his deceased brother arid sister. It is further suggested that if such construction be given to the will the result will be in keeping with the general intent shown by the will; that it can make no difference to appellees, as under the will they take the personal property, and that if both clauses be held invalid, while appellants would share, under the law, with appellees in the personalty, appellees would also share equally with appellants in the realty, and thus the taking in the *corpus* would be in the proportions intended by the testator; that to reject the third and fifth clauses and leave the second stand, as was done by the court below, would have the effect of giving to appellees the Blackleys all the personalty and half of the realty, or substantially 'three-fourths of the estate, and to the appellants one-fourth only; that the intention of the testator, as evidenced by the scheme adopted by him, was otherwise, and that the result of upholding the second clause would work manifest injustice to appellants.

Appellees do not deny that the effect of the construction and holding of the chancellor is to give them one-half of the real estate, or one-half of the property devised to appellants, whether it be regarded as real estate or personal property, contrary to the intention of the testator. They do not claim that they were to receive any benefit under clauses 3 and 5 of the will, nor do they deny that the devises as attempted to be made by the will made each set of heirs practically equal, but they urge that the clauses are independent provisions, and assert the general propositions that the valid provisions will not be overthrown on the ground that any independent condition is contrary to law, and that the valid

part will be sustained though other parts are rejected as invalid, if no violence is done to the parts sustained; and further, that although it may be conjectured, from similarity of relationship, that the testator had the same intention in regard to both, independent devises not grammatically connected with the invalid ones by the expression of a common purpose must be construed separately.

All of the positions of appellees may be conceded and yet appellants' contentions sustained under the law. Where provisions of a will are in fact independent and not for the carrying out of a common or general purpose, it is undoubtedly true that such as are contrary to law may be rejected without in any manner affecting valid provisions. The statement, however, that a valid provision will be sustained if no violence is done to the parts sustained by the rejection of the invalid provisions is too narrow a statement of the rule, and is in disregard of the cardinal principle that the testator's wishes, as evidenced by the general scheme adopted, are to be taken into consideration, so that justice must be done if it can be. The rule as stated by appellees would seldom ever permit a valid provision to be set aside because other provisions were held invalid. It would be difficult to frame a will so that the rejection of the invalid provisions could seriously affect or do violence to valid provisions which might be sustained. The correct solution can only be arrived at by taking into consideration the general scheme and intention of the testator, and the effect that defeating a part of the provisions may have upon the general scheme of the testator or on the beneficiaries or objects of his bounty. In *Tilden* v. *Green,* 130 N. Y. 29, the position now taken by appellees was urged, and the court remarked: "The appellants invoke the aid of the principle that where several trusts are created by a will which are independent of each other and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, the illegal trusts may be cut off and the legal ones permitted to stand. The

rule is of frequent application in the construction of wills, but it can be applied only in aid and assistance of the manifest intent of the testator, and never where it would lead to a result contrary to the will or work injustice among the beneficiaries or defeat the testator's scheme for the disposal of his property. The rule as applied in all reported cases recognizes this limitation: that when some of the trusts in a will are legal and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries, or some of them, then all the trusts must be construed together, and all must be held illegal and must fall." The rule above announced was recognized and applied in the following cases: *Lawrence* v. *Smith, supra; Eldred* v. *Meek,* 183 Ill. 26; *In re Johnson's Estate,* 185 Pa. St. 179; *Fosdick* v. *Fosdick,* 6 Allen, 48; *In re Walkerly,* 108 Cal. 627; *Benedict* v. *Webb,* 98 N. Y. 460; *Hafner* v. *Hafner,* 71 N. Y. St. 1; *Clemens* v. *Clemens,* 60 Barb. 366; *Richards* v. *Moore,* 5 Redf. 278.

It is not necessary to invalidate all the provisions of a will in order to apply the rule contended for by appellants. Although valid portions may be set aside because of the rejection of invalid ones, so that the scheme and intention of the testator may be effectuated, unimportant provisions which do not enter into the general scheme may be permitted to stand, as was done in *Lawrence* v. *Smith, supra,* where the rule contended for by appellants was applied to certain provisions of the will which entered into the general scheme of disposition and which would be thwarted by the rejection of invalid portions, and independent provisions not entering into the general scheme were allowed to stand. The fourth clause in the will at bar disposes of the inconsequential interest the testator had in the estate of his brother to one of his nieces. That clause forms no part of the general scheme

of disposition of the estate of the testator. The property disposed of by it was of such unimportant character that it is only described by reference to its occupancy, and that clause of the will falls within the rule contended for by appellees as an independent clause forming no part of the general scheme, and not connected with the other clauses of the will disposing of the general property of the testator and not calculated in any way to prejudice the interests of the devisees under the general provisions.

It is manifest that the testator intended to make a testamentary disposal of all of his property and to leave no portion of it as intestate estate. Because of the illegal or invalid third and fifth clauses of his will he has failed to do so, and if those clauses alone are set aside and the other clauses given effect there can be no question but that the intention of the testator as to the manner of distribution of his property will be defeated. We are therefore of the opinion that the court below correctly held that the third and fifth clauses were invalid, and are also of the opinion that it should have set aside the second clause, so that the property described in the second, third and fifth clauses might all pass as intestate property, so that the persons the testator intended should have it in equal parts may take it under the law of descent, as by so doing they take it in the proportion designed by the testator, as manifested by the will.

The court erred in not setting aside the second clause of the will. In all other respects the decree is right and is affirmed. But for the failure to set aside the second clause of the will the decree is reversed and the cause is remanded, with direction to enter a decree in conformity with the views herein expressed. It appears that the appellees the Blackleys confessed the bill below and that the executor filed an answer and contested the same, and it is ordered that the costs of this appeal be paid by said executor out of the funds of the estate in due course of administration.

*Affirmed in part and remanded, with directions.*