JOSEPH H. O'HARE *et al.* Plaintiffs in Error, *vs.* HELEN
E. JOHNSTON *et al.* Defendants in Error.

*Opinion filed June 22, 1916.*

1. WILLS—*rule against perpetuities stated.* No interest subject
to a condition precedent is good unless the condition must be ful-
filled, if at all, within twenty-one years after some life in being at
the creation of the interest.

2. SAME—*violation of rule not permitted by creation of a trust.*
A violation of the rule against perpetuities is not permitted where
the property is covered by a trust, nor does the rule permit limi-
tations of future equitable interests to transcend those of legal
interests.

3. SAME—*a vested interest is not subject to the rule against
perpetuities.* If the title vests within the period named, it is im-
material whether the person in whose favor the provision was
made had the right to possession and enjoyment of the property
within that period.

4. SAME—*how testator's intention is to be ascertained.* The
intention of the testator is to be found by construing the words
employed in the will itself in the light of the circumstances sur-
rounding the testator, and while the rules for the construction of
wills should be kept in mind, no one rule is final or conclusive.

5. SAME—*purpose and usual incidents of spendthrift trust.* The
purpose of a spendthrift trust is to provide a fund for the main-
tenance of a beneficiary and at the same time secure it against his
own improvidence or incapacity, and the usual incidents of such a
trust are directions against alienation by the voluntary act of the
beneficiary or through legal process by his creditors.

6. SAME—*when trust will not be held to be a spendthrift trust.*
A trust in personal property to continue for thirty years, the in-
come to be paid semi-annually to the testator's son and daughter
in equal shares, will not be held to be a spendthrift trust, where
there is no restraint on alienation and no discretion as to payment
of income or principal, and where the will gives each of the bene-
ficiaries a large amount of real estate and other property outright
and the son is made one of the executors of the will.

7. SAME—*what indicates that postponement of the payment of
principal is for benefit of estate.* Where a trust in a large amount
of bonds is created for a period of thirty years, the fact that the
will shows the testator regarded the investment in such bonds as
of value to the estate indicates that the postponement of the pay-

ment of the principal was for the convenience of the estate and not for reasons personal to the beneficiaries.

8. SAME—*postponement for benefit of estate is an argument in favor of vesting at testator's death.* The postponement of the payment of the principal of a trust fund for the benefit of the estate and not for reasons personal to the beneficiaries furnishes an argument in favor of the vesting of the interests of the beneficiaries at the death of the testator.

9. SAME—*when gift to grandchildren is vested.* Where a will creates a trust for thirty years, with directions to pay the income to the testator's son·and daughter and at the expiration of that period to divide the principal between them, equally; makes provision for the contingency of the death of either of the children, without issue, before the testator's death or after his death but during the trust period, and provides that "in the event that either of my children die having a child or children, either before my death or before the expiration of the period of said trust, I direct that the income from said trust fund and the principal of said trust fund at the expiration of said period hereby given to its or their parent be paid to said child or children," the gift to the grandchildren will vest at the death of their parents during the trust period and is not contingent upon the grandchildren surviving the trust period. (*Reid* v. *Voorhees,* 216 Ill. 236, distinguished.)

10. SAME—*distinction between à definite and an indefinite failure of issue.* A definite failure of issue is when a precise time is fixed by the will for the failure of issue, whereas an indefinite failure of issue means a failure of issue whenever it shall happen, without any fixed or certain period, and since an executory devise upon an indefinite failure of issue may tie up property for generations it is void.

11. SAME—*when provision contemplates definite failure of issue.* A provision in a trust for the benefit of the testator's son and daughter that in the event of the death of either without issue during the period of the trust then the whole of the fund shall be held for the benefit of the survivor contemplates a definite failure of issue, where it is apparent from other provisions of the will that the testator intended the words "without issue" to mean "without children," and in such case the provision is not void for remoteness.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Fayette county; the Hon. THOMAS M. JETT, Judge, presiding.

JOHN J. BROWN, MURRAY & MURRAY, STEWART, BRYAN & WILLIAMS, and McSHANE & GOODWIN, (J. G. BURNSIDE, guardian *ad litem,*) for plaintiffs in error.

ALBERT M. KALES, WILLIAM D. BANGS, and ARTHUR ROE, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by plaintiffs in error in the circuit court of Fayette county to construe the will of Benjamin F. Johnston, deceased. After the pleadings were settled the trial court entered a decree construing the will and holding it valid in every respect. On an appeal to the Appellate Court it was held that the fourth clause of the will was void because it violated the rule against perpetuities, and the decree of the trial court was reversed. The case has been brought here on petition for *certiorari.*

Johnston died February 2, 1905, fifty-six years of age, leaving the will in question, which was dated July 2, 1904, and disposed of property valued at about $600,000. He left a widow, Mary B. Johnston, then in her fifty-fourth year; a son, William M. Johnston, twenty-two years old; and a daughter, Hazel D. Johnston, eighteen years old. The daughter was unmarried. The son had been married about a year. The will provided for the payment of testator's debts and an annuity of about $500 to his mother. It gave the wife certain real estate for life with remainder to the son and daughter equally, and certain cash, bonds and stock amounting to $48,500. The fourth clause of the will reads:

*"Fourth*—I hereby direct my executors, hereinafter appointed, to deliver or pay over to the St. Louis Union Trust Company of St. Louis, Mo., a corporation organized and existing under and by virtue of the laws of the State of Missouri, one hundred Gray's Point Terminal Railroad bonds, which they will find among my papers, of the face

value of $1000 each, a total of $100,000, and one hundred Trinidad Electric Railroad Company bonds, which will also be found among my papers, of the face value of $1000 each, a total of $100,000. Should any of said bonds be matured or for any reason paid or sold or transferred by me before my death, I hereby direct my executors to turn over to the said Union Trust Company, in lieu thereof, securities to the value of the bonds above mentioned that have been so paid off, transferred or assigned, or in lieu of said securities to pay to the said Union Trust Company cash to make up the fund above directed to be deposited with said St. Louis Union Trust Company, and I hereby appoint said trust company trustee of said fund and direct that it shall hold said fund for the period of thirty (30) years after my death, and I direct said trust company to keep said fund invested in case any part of it should be paid to it in cash or securities other than above named bonds by my executors, or should any of said Gray's Point or Trinidad bonds be redeemed or paid after my death and before the expiration of the period of said trust, so as to secure the highest rate of interest for safe and conservative investment, and to keep the said fund so invested during the period of this trust. I direct said trust company to pay one-half of the income arising from said trust fund, after deducting its reasonable compensation for acting as such trustee, to my son, William M. Johnston, and one-half to my daughter, Hazel D. Johnston, and that said payments shall be made semi-annually. At the expiration of said period of thirty years I direct said trust company to deliver to the said William M. Johnston $50,000, par value, of said Gray's Point Terminal Railroad Company bonds and $50,000, par value, of said Trinidad Railroad Company bonds, or deliver to him the securities or pay to him the cash held by said trust company at that time in lieu of the said bonds, and also to deliver to my said daughter, Hazel D. Johnston, $50,000, par value, of said Gray's Point Terminal Railroad Company

bonds and $50,000, par value, of said Trinidad Railroad Company bonds, or deliver to her the securities or pay to her the cash held by it in lieu of said bonds. In the event of the death of either of my said children, William M. Johnston and Hazel D. Johnston, without issue before my death, I direct that the whole of the above named trust fund shall be held for the use of the survivor and the income therefrom paid to the survivor, and in the event of the death of either of my said children after my death and before the expiration of the above named trust without issue, I direct that the income from the whole of said trust fund and the whole of the trust fund itself be paid to the survivor, but in the event that either of my said children die having a child or children, either before my death or before the expiration of the period of said trust, I direct that the income from said trust fund and the principal of said trust fund at the expiration of said period hereby given to its or their parent be paid to said child or children."

The fifth clause of the will directed the conversion of all the rest of the estate, real and personal, into cash, to be divided equally among his wife, son and daughter. The sixth clause requested his executors to retain his secretary in their employ during the settlement of the estate. The seventh and last clause named his son, William M. Johnston, and George T. Turner, executors. After the will was duly probated. the executors qualified, and the bonds mentioned in said fourth clause were delivered to the St. Louis Union Trust Company, as directed therein.

The daughter, Hazel, married Joseph H. O'Hare July 18, 1905, and a daughter, Mary Hazel O'Hare, was born to them in 1907. The son, William, died intestate January 20, 1913, never having had any children, and leaving his wife, Helen E. Johnston, his mother and his sister as his heirs-at-law. May 15, 1913, Hazel D. O'Hare died intestate, leaving her husband and her daughter, Mary Hazel O'Hare, as her heirs-at-law. Joseph H. O'Hare is the ad-

ministrator of the estate of his deceased wife and Helen E. Johnston is administratrix of that of her deceased husband. The trust company paid the income arising from the bonds which it had received under the will to the son and daughter until January 1, 1913, and after the son's death paid the balance earned on $100,000 during the son's lifetime to his administratrix, but refused the demand of the daughter's administrator to pay to him, after her death, the income on the whole $200,000, until the will had been construed by some competent court. This bill was then filed.

The rule against perpetuities has been thus stated: "No interest subject to a condition precedent is good unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." (Gray on Perpetuities,—3d ed.— sec. 201.) If the provisions of the will are of such a character that under them a violation of the rule against perpetuities may possibly happen, then the devise must be held void. (*Quinlan* v. *Wickman,* 233 Ill. 39.) The violation of the rule against perpetuities will not be tolerated when the property is covered by a trust, nor will the rule permit limitations of future equitable interests to transcend those of legal interests. (*Bigelow* v. *Cady,* 171 Ill. 229.) A vested interest is not subject to the rule against perpetuities. (Gray on Perpetuities,—3d ed.—sec. 205; *Flanner* v. *Fellows,* 206 Ill. 136; *Lunt* v. *Lunt,* 108 id. 307.) If the title vests within the period named it is immaterial whether the person in whose favor the provision was made had the right to possession and enjoyment of the property within that period. *Seaver* v. *Fitzgerald,* 141 Mass. 401.

Counsel for defendants in error insist that clause 4 is void for the following among other reasons: (1) That the ultimate gift to the grandchildren is contingent on their surviving the thirty-year period; (2) that the gift is to a

class, namely, the grandchildren; (3) that the gift to the testator's children is contingent, by reason of the gifts over, if they die within the thirty-year period, coupled with the fact that the gift to the grandchildren is a substitution for the gift to the children, and that, the gift to the children being contingent, the gift to the grandchildren is of the same character; (4) that the separation of the trust fund and the provision for the payment at the end of the thirty-year period were for reasons personal to the legatees; (5) that the fact of there being no express restraints on alienation, coupled with the express purpose of creating a special fund for the protection of the legatees, as shown in the will, is an argument in favor of contingency; (6) that the gift over to the surviving child if either child dies without issue in the thirty-year period is void for remoteness, and this so breaks up the scheme of the fourth clause that the gift to the grandchildren must also fail; (7) that to hold the fourth clause valid is apt to bring about a result against the clear intention of the testator, viz., the taking of the entire trust estate by the son-in-law, O'Hare, by inheritance from his daughter.

Counsel for plaintiffs in error argue that under the rules that apply and should control in construing this will it must be held valid, and rely particularly on the following: (1) A legacy will be held vested unless a contrary intention on the part of the testator is clearly manifested; (2) a legacy which is not to be enjoyed in possession until some future period, when no special intention to the contrary is manifested by the testator, will be construed as vesting immediately on his death; (3) the language of the will is always liberally construed in favor of vesting the legacy as early as possible; (4) where in the construction of a clause there is a doubt as to the point of time when it was intended the estate should vest, the earliest will be taken; (5) where devises over occur they may be resorted to for the purpose of ascertaining the nature of the estate

which it was intended to convey; (6) where it appears from the will that the testator regarded his disposition of the legacy as creating a vested interest it cannot be said that he intended otherwise even though there is no express gift *in præsenti*; (7) where the fund, under direction of the will, is to be immediately severed from the residue of the estate, such disposition, in the absence of language to the contrary, is construed to mean that the estate vests at the testator's death.

We find frequent statements in the briefs to the effect that if one of these reasons or rules applies in this case it answers certain reasons or rules for holding that the estate is contingent or vested, as argued by the other side. We know of no decision or authority that lays down any such doctrine. It is proper to take into consideration any or all of these reasons or rules that apply, but no one of them is final or conclusive. "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." (*Smith* v. *Bell*, 31 U. S. 68; *Bradsby* v. *Wallace*, 202 Ill. 239.) "All rules of construction yield to the intention of the testator plainly expressed." (*Fifer* v. *Allen*, 228 Ill. 507.) "Where, upon the inspection of the will and consideration of the relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield, provided that intent does not offend against public policy or some positive rule of law." (*Robinson* v. *Martin*, 200 N. Y. 159.) The principles of former decisions of courts should be kept in mind, for while the testator's intention "is implicitly obeyed, however informal the language in which it may have been conveyed, yet the courts, in construing that language, resort to certain established rules by which particular words and expressions, standing unexplained, have obtained a definite meaning." (2 Jarman on Wills,—Bigelow's 6th ed.—*1651.).

Counsel also have cited numerous decisions on the construction of wills, arguing that certain of these cases should bear strongly upon the construction to be given this will. While we shall refer hereafter to certain of these authorities which have more or less bearing on the questions here under consideration, any attempt to review all of them would make a volume in itself. It was said long ago in *Gulliver* v. *Poyntz,* 3 Wils. 141: "Cases on wills may serve to guide us with respect to general rules in the construction of devises in wills, but unless a case cited be in every respect directly in point and agree in every circumstance with that in question it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." This doctrine has been approved more than once by this court. (*Boyd* v. *Strahan,* 36 Ill. 355; *Orr* v. *Yates,* 209 id. 222; *Armstrong* v. *Barber,* 239 id. 389.) Furthermore, the language of a decision must always be construed with reference to the facts of that particular case, and its authority is largely limited to those points of law raised on the record and necessary to the determination of the case. (Black's Law of Judicial Precedent, sec. 11.) Precedents and rules are frequently of slight value in the interpretation of wills, as those instruments are rarely, if ever, identical in wording, (*Black* v. *Jones,* 264 Ill. 548,) and are often not even similar. Moreover, the intention of the testator is found by construing the words employed in the will itself in the light of his circumstances and surroundings. The court, in construing a will, is not bound to shut its eyes to the facts under which the document was made. Such facts often elucidate materially the scheme of distribution in the testator's mind. In construing a will the court should, so far as possible, in the light of these circumstances, place itself in the position of the testator at the time the will was drawn and be guided by the light thus thrown on the testamentary scheme to assist in arriving

at the intention of the testator. (1 Jarman on Wills,—Sweet's 6th ed.—503; 2 Underhill on Wills, sec. 909.) The facts and circumstances surrounding two different testators in making their respective wills are never the same.

Clearly, under the wording of this will the gift of the income of the trust fund to the children was vested. It is not necessary to decide whether the gift of the fund itself to the two children, or the survivor of them, was subject to the condition precedent that such children or the survivor should be alive at the expiration of said thirty-year period. In case either or both of them were living at the expiration of such period the gift would vest in the life of a person who was in being at the testator's death. If both died within the thirty-year period the question would be, as it is here, what interest the grandchildren would take in the fund under said fourth clause and whether any other person or persons would take any interest. The principal arguments are made with reference to whether the gift to the grandchildren in said fourth clause is contingent or vested. Counsel for defendants in error argue that the gift of the fund to them at the expiration of the trust rests upon the condition that they must be alive at the end of the thirty-year period. It is a general rule of construction that a gift contained only in the direction to pay the principal of a trust fund at the expiration of the trust raises a presumption, at least, that the legacy is contingent. (*Scofield* v. *Olcott,* 120 Ill. 362.) This trust fund, under the directions in the will, was to be immediately severed from the residue of the estate and kept severed until the end of the thirty-year period, the income, in the meantime, being given to the legatees. The gift of the whole of the interest or income from a legacy is generally held to vest the principal at the testator's death. (*Armstrong* v. *Barber, supra; Carter* v. *Carter,* 234 Ill. 507; 2 Underhill on Wills, sec. 872.) But counsel for defendants in error argue that the whole income as to the grandchildren is given in a lump sum to

the grandchildren as a class and not to individuals, and that this tends to show that the gift was contingent. The gift to the grandchildren, during the life of the children, was merely an executory devise, and, manifestly, at the death of a child, or within the period of gestation thereafter, his or her children would be ascertained and determined, and it would not be necessary to wait to find out who were in the class (of that parentage) until the end of the thirty-year period. If this were the only question to decide in ascertaining whether the estate is vested or contingent in the grandchildren, it would seem clear that the gift would vest in the grandchildren at the death of their parent and not at the time fixed for the distribution of the trust fund.

But it is further argued that the entire fourth clause of the will is a spendthrift trust provision for the testator's children and grandchildren for a period of thirty years, and that this fact argues strongly in favor of contingency of the gift. A spendthrift trust is created with a view of providing a fund for the maintenance of another and at the same time securing it against his own improvidence or incapacity. Directions against alienation by the voluntary act of the beneficiary or through legal process by creditors are the usual incidents of such trusts. (*Steib* v. *Whitehead,* III Ill. 247; *Wagner* v. *Wagner,* 244 id. 101; *Wallace* v. *Foxwell,* 250 id. 616.) There is nothing in the wording of the will itself as to this trust that indicates that it is of a spendthrift character. We find no restraint on alienation and no discretion as to the payment of income or principal. It is true there is evidence tending to show that the testator had expressed doubts as to the son settling down to business and as to whether he would be able to take care of himself, and stated that the daughter, while in school, had been accustomed to spend a good deal of money which the father had provided; that she was under age at the time the will was drawn and that both the son and daughter had depended on their father for support. But it is also true

that this fund referred to the grandchildren as well as the children, and the testator, naturally, could not form any idea as to whether they would need the protection of a spendthrift trust. It is the intention of the testator that decides, under the authorities, the character of the trust. If it is shown that his intention indicates a spendthrift trust, the court will not inquire whether the beneficiary is, in fact, a spendthrift. (*Wagner* v. *Wagner, supra.*) The will does not indicate that the testator thought his children were spendthrifts. He gave to each of them valuable real estate and a large amount of other property. In addition to this he gave them the income from the trust fund, which tends strongly to show that he had no suspicions or apprehensions as to their ability to handle their own property. The reasoning of this court on a somewhat similar question in *Black* v. *Jones, supra,* lends strong support to the argument that the giving of large sums directly to them indicates that the trust was not of a spendthrift character. There is another reason that could be urged against the view that the testator considered this a spendthrift trust. He would hardly have appointed his son one of the executors if he had considered him a person not to be trusted with business matters. We think the conclusion might well be drawn that the reason for creating this trust was based on the desire of the testator to keep his property in his own descendants and prevent it from going, in the next generation, to strangers to his blood. This trust was certainly an appropriate method for bringing about this result. But we are of the opinion that it is unnecessary to decide whether or not the trust created by clause 4 is classified as a spendthrift trust, so far as concerns the determination whether the trust estate was vested or contingent. In *Wagner* v. *Wagner, supra,* although it was held that the trust was of a spendthrift character, the court also held that the beneficiary took a vested equitable interest. (See 26 Am. & Eng. Ency. of Law,—2d ed.—144.)

The further argument is made in this connection that the separation of the trust fund and the provisions for the payment at the end of the thirty-year period were for reasons personal to the legatees and for their special protection, and therefore those facts present a weighty argument in favor of contingency. What has already been said, we think, is a complete answer to this argument. Another reason, however, may be given to show that the postponement of the payment of the principal of the fund was for the benefit of the estate and not for the convenience of the legatees. In this case the testator knew that it was the business of the trustee he chose, to manage and care for great investments. It is apparent from the language of the will that he thought that the bonds set aside for this trust estate might not mature but the bonds themselves would be delivered, at the expiration of the period, to the legatees. He considered the investment he had made in these bonds as of value to his estate. If the postponement in this case was for the benefit of the estate and not for reasons personal to the legatees, then it is conceded by all parties that this is an argument in favor of the vesting of the legacies at the death of the testator. In this respect the case is somewhat analogous to that of *Mettler* v. *Warner,* 243 Ill. 600. In that case the testator believed that investments in valuable farm lands were good and should be continued for the period named in the will, and it was there held that the postponement was for the convenience of the estate and not personal to the legatee. If the continuance of investments in farm lands was for the benefit of that estate, why may it not be argued that the continuance of the investment in these bonds was for the same purpose?

The argument is further made that the gift to the grandchildren can only be held vested at the end of the thirty-year period because the income is not given to the grandchildren at all during that period but only at the end of that time, or if given, it is in such doubtful language

that it cannot be held to have vested before that time; that the gift of the income is in a lump sum to all of the grandchildren and is separate and distinct from the gift of the principal because the income given does not correspond to that on the particular bonds required to be delivered at the period of the distribution. This argument is based upon the language of the will which reads: "I direct that the income from said trust fund and the principal of said trust fund at the expiration of said period hereby given to its or their parent be paid to said child or children." The will had theretofore provided that the semi-annual payments of income to the parents were required to be made. The will is not worded on this point as in our judgment it would have been had the testator intended that the principal and the accumulated income of the trust fund should be paid together to the grandchildren at the end of the thirty-year period. The income and the principal are given in the same proportion, in the same way, and the income to each grandchild corresponds to that grandchild's proportionate share of the principal fund. We find no provision in the will that requires the trustee, during the life of the trust, to apportion the securities or hold any particular security for any particular beneficiary. The essential feature of the provisions on that point is that the securities at the end of the trust shall be equally divided between the two children, if living. If any particular securities are redeemed others are to be substituted, and at the expiration of the period each of the children, if both were living and if no substitution had been necessary, was to receive fifty of each of the two kinds of bonds, but if it should be necessary to substitute or replace with other securities or cash, then the remaining bonds of each of the two corporations were to be divided equally between the two children.

The argument of counsel that if these legacies are vested and not contingent it might bring about a result not intended by the testator, as it would, perhaps, give the en-

tire trust estate to the testator's son-in-law, O'Hare, by inheritance from his daughter, seems to us without special merit. Manifestly, the testator intended to provide for every contingency which he thought might arise in regard to the death of one or both of his children, either before or after his death, with or without issue, and to make gifts over in anticipation of such contingencies. He made no such provision as to the death of the grandchildren. Is it not fair to conclude that it was his intention that the grandchildren should take the entire trust fund in the event of the death of both of his children and that the gift to the grandchildren should vest at the death of their parent? He certainly never intended that if his daughter left two children and one of them died before the expiration of the trust period, leaving children, and the other grandchild should live to the expiration of the trust, the last named should receive the whole share of the fund while the children of the deceased grandchild would receive nothing. Clearly, he never intended to make any provision as to what should become of the part of his property which might vest in a grandchild, after it so vested, other than that directed by the law. If the argument of counsel for defendants in error on this point be sound, then it would result in distributing this estate one-third to Helen E. Johnston, (a stranger in blood to the testator,) one-third of the estate to testator's daughter, to be distributed between Joseph H. and Mary Hazel O'Hare, and one-third to his wife, Mary B. Johnston,—which third, if she died intestate before the death of her children, would pass by descent to her children and ultimately might pass to the plaintiff in error O'Hare, and thus a large part, or all, of the estate would go to strangers to the blood. This argument, carried to its logical result, answers itself.

If we were relying largely on the reasoning and conclusions in other cases decided by this court, we are of the opinion that *Armstrong* v. *Barber, supra,* and *Mettler* v.

*Warner, supra,* are as nearly parallel on the facts and the wording of the will as to the trust fund as any decided by this court, and in both those cases the legacies were held vested. Counsel for defendants in error have argued at length that those two cases may be distinguished for the reason that they are based upon the ground that the postponement of payment of the principal was for the convenience of the estate and also because in those cases the gift was to individuals and not to a class, and that in the *Armstrong case* the gifts were contained in the residuary clause. We have already answered the argument as to the postponement of payment. In the *Warner case* the proceeds and income from the trust estate were to be paid to the testator's children or their descendants in equal parts, *per stirpes* and not *per capita.* There was there no express devise to the testator's children of all the proceeds and income. The court there said (p. 611) : "Taking the entire testamentary scheme into consideration, it is apparent that the testator intended the entire beneficial interest in his estate to vest in his children and the lineal descendants of such as might die before the period of distribution was reached. There is an absence of any purpose to give any other person any interest in or benefit from the estate." Neither in the wording of the will in the *Warner case* nor in the *Armstrong case* do we find any controlling differences as to the vesting of the estate in the descendants of the children from the wording in this regard in the will here under consideration.

Counsel rely strongly upon the case of *Reid* v. *Voorhees,* 216 Ill. 236, to uphold their argument that the gift here in question to the grandchildren is contingent upon their surviving the thirty-year period. In that case the will, in its third clause, bequeathed to six nephews and nieces, by name, rent from the real estate, to be collected by the executors and to be paid them equally, annually, for thirty years. By the fifth clause it was provided that "thirty

years after my death I give and bequeath to my above named nephews and nieces or their heirs, and if no heirs to be divided equally among the surviving heirs, all of my above described real estate, to be divided equally among them, said real estate to be sold and the proceeds of sale divided equally." It will be noted that this fifth clause says "thirty years after my death I give and bequeath." There is no such wording as to the gift of the principal or income to the children or grandchildren in this will. This court, in construing the will in *Reid* v. *Voorhees, supra,* based its conclusion largely upon this wording of the fifth clause, for it said (p. 244): "There is no present grant of the *corpus* to the appellants, but the grant is preceded by the expression, 'thirty years after my death,' " etc. The word "heirs," as first used in the fifth clause of the will in that case, undoubtedly meant "children," so that the gift to the nephews and nieces was necessarily contingent upon their being alive at the time of the distribution, which was to be made among the nephews and nieces who were living at that time and the children of those who were dead. On the facts and reasoning in that case it cannot control as to the vesting of the gift in the grandchildren here. Neither do we consider the holding of this court controlling in *Hill* v. *Hill,* 264 Ill. 219, *Brewick* v. *Anderson,* 267 id. 169, and *Drury* v. *Drury,* 271 id. 336, where it is stated that in the case of a gift to a class only those take who are in existence at the arrival of the time of distribution. In the case, of *Brewick* v. *Anderson, supra,* it is said that this rule applies unless there is language in the will showing a different intention. We are of the opinion that not only the language in the will here under consideration but the whole scheme of the testator indicates that the legacy vested in the grandchildren at the death of their parent and not at the time of the distribution.

Counsel for defendants in error also place great reliance upon the reasoning of the court in *In re Kountz's Estate,*

213 Pa. St. 390, as supporting their argument that the gift in the said fourth clause of this will is contingent and not vested. It was held in that case that the gift of the income and that of the principal were distinguished, because the gift of the income was divided *per stirpes* and the gift of the principal *per capita,* the court also saying (p. 396): "We do not have here the case of income and principal to be paid to the same person in the same right. The testator has not given the principal to be paid at a future time, with income or maintenance in the meantime. On the contrary, there are distinct gifts of the income to the children and of the principal to the grandchildren." While there are other differences in the wording of the wills which are important, the difference here noted is sufficient to show that the reasoning in that case should not be decisive here.

There is another argument, very earnestly urged by counsel, that must receive our consideration, and that is that the gift over to the surviving child if either child dies without issue during the thirty-year period is void for remoteness, and that this so breaks up the scheme of the testator as to this trust fund that the gift to the grandchildren must fail. This argument seems to be based upon the assumption that "die without issue" is used in said fourth clause of the will as denoting an indefinite failure of issue within the thirty-year period and means "be dead without issue" at any time within said period; that it is therefore possible that one or the other of the children might "be dead without issue" at a time beyond the period of a life in being and twenty-one years thereafter and still within this thirty-year period. "A definite failure of issue is when a precise time is fixed by the will for the failure of issue. * * * An indefinite failure of issue is a proposition the very converse of the other, and means a failure of issue whenever it shall happen, sooner or later, without any fixed, certain or definite period within which it must happen. It means the period when the issue or descendants of the first taker shall

become extinct and when there is no longer any issue of the issue of the grantee, without reference to any particular time or any particular event, and an executory devise upon such an indefinite failure of issue is void, because it might tie up property for generations." (4 Kent's Com.— 13th ed.—*274.) We have held that "courts will seize hold of slight circumstances to give to executory devises a construction which regards the failure of issue as relating to a definite period of time." (*Strain* v. *Sweeny,* 163 Ill. 603; 3 Words and Phrases, 2060; see, also, *Abbott* v. *Essex Co.* 59 U. S. 202.) In the clause we are now construing the testator in one place provided for a disposition of the property in case his children should die leaving children; in another place in the same clause he provided for a disposition in case either of his children died without issue. The meaning of the words "without issue" depends upon the testator's intention. The word "issue" will be construed as synonymous with children where, from all the language used, such appears to have been the intention of the testator. (*Arnold* v. *Alden,* 173 Ill. 229.) Without question, in this clause of the will the testator used the words "without issue" as meaning the same as "without children." It necessarily follows, therefore, that it cannot be held that he intended that the gift over to the survivor should begin upon an indefinite failure of issue. *Stisser* v. *Stisser,* 235 Ill. 207, and cases cited.

Joseph H. O'Hare, individually and as administrator of his wife's estate, argues that upon the death of William M. Johnston the principal of the trust fund became the absolute property of the daughter, Hazel, and that it became the duty of the trustee immediately to deliver it to her. Said fourth clause provides that in case of the death of either of said children without issue before the death of the testator "the whole of the above named trust fund shall be held for the use of the survivor and the income therefrom paid to the survivor," and in case of the death of

either of said children without issue after the death of the testator and before the expiration of the trust, "that the income from the whole of said trust fund and the whole of the trust fund itself be paid to the survivor, but in the event that either of my said children die having a child or children, either before my death or before the expiration of the period of said trust;" then the "income from said trust fund and the principal of said trust fund at the expiration of said period hereby given to its or their parent be paid to said child or children." The argument of counsel for O'Hare is that the words "the income from the whole of said trust fund and the whole of the trust fund itself be paid to the survivor," indicate that the testator's intention was to give the immediate possession and full ownership of the principal, as well as the income, to the survivor of said two children. This provision relied on must be read in connection with what comes both before and after it in said clause. Reading all these provisions together, it is evident that the testator intended to give an immediate gift of the income, only, to the survivor of said two children, whether the death of the child was before or after that of the testator. The gift to the survivor, if vested, was subject to being divested by the death of such survivor leaving a child or children before the expiration of the period of the trust, and, necessarily, if the whole of the trust fund was given by the previous gift to Hazel, the daughter, who was the survivor of the two children, by this clause it was given, on her death, to her child, and her estate can have no interest in it.

The further argument is made that the provision requiring the trust fund to continue thirty years from the testator's death is void because it may be in effect longer after testator's death than a life in being and twenty-one years thereafter. The rule against perpetuities is concerned only with the beginning of the interest. It "settles the time

within which interests must vest, but when once vested they are all, present and future alike, subject to the same restraints against alienation, and with this the rule against perpetuities has nothing to do." (Gray on Perpetuities,— 3d ed.—sec. 121*f.*) Trusts such as this have been approved, or at least permitted, in this State. Once permitted there must be certain limits as to the length of time they can last. This court has held that trusts must terminate as soon as the objects sought have been accomplished. (*Armstrong* v. *Barber, supra.*) The defendants in error are not concerned with the postponement of the payment of the principal of the trust fund. If, under the rules of law, the trust will not be permitted to continue for the full period of thirty years, this would not work such an utter destruction of the testator's scheme that the whole trust must fail. (*Wagner* v. *Wagner, supra,* p. 114.) The gifts having vested within a life in being and twenty-one years thereafter, they must be held valid. The death of the son and the daughter of the testator has vested in the grand-daughter, Mary Hazel O'Hare, the equitable right to the income and principal of the fund created by the fourth clause of the will.

This case has been ably and exhaustively presented in the briefs and arguments. We have not attempted to consider *seriatim* or in detail the numerous points raised by counsel. What we have said, however, we think has covered, in effect, all the questions argued. Having in mind the various rules of construction relied upon by counsel, in the light of the surroundings under which the will was executed, weighing all the circumstances for and against contingency, we have reached the conclusion that the will provided that the gifts to the grandchildren should vest in them at the death of their parents. This construction is plainly warranted by the language of the will and gives effect and carries into execution the testator's intention. The

fourth clause, therefore, does not violate the rule against perpetuities.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*